METPATH INC., Plaintiff,

v.

Pascal IMPERATO, M.D., as Commissioner of the Department of Health of the City of New York and Chairman of the Board of Health of the City of New York, the Department of Health of the City of New York, and the Board of Health of the City of New York, Defendants.

No. 78 Civ. 1016 (JMC).

United States District Court, S. D. New York.

April 17, 1978.

---

Marshall, Bratter, Greene, Allison & Tucker, New York City (Charles H. Miller, Michael L. Hirschfeld, Terri E. Simon, New York City, of counsel), and Gary J. Cohan, Metpath Inc., Hackensack, N. J., for plaintiff.

Allen G. Schwartz, Corp. Counsel of the City of New York, New York City (Milton Weinberg, Asst. Corp. Counsel, New York City, of counsel), for defendants.

## OPINION

CANNELLA, District Judge.

After a bench trial, advanced and consolidated with the hearing on plaintiff's application for a preliminary injunction, the Court declares unconstitutional New York City Health Code § 13.21(h) ["the regulation"] and enjoins defendants from enforcing the ban on advertising by clinical laboratories contained in that regulation.[1]

Jurisdiction is based upon the Civil Rights Act, 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343(3).

## FACTS

The regulation challenged in this suit provides in full text:

> A clinical laboratory shall not advertise for patronage to the general public by means of bills, posters, circulars, letters, newspapers, magazines, directories, radio, television, or through any other medium.

N.Y.C. Health Code § 13.21(h) (1973).

Plaintiff Metpath Inc. ["Metpath"] is a New York corporation, with its principal place of business in New Jersey, and is a "clinical laboratory" within the meaning of the regulation. During January and February of 1978 Metpath sought permission from defendants to publish a certain advertisement[2] in a newspaper of general circulation within the City of New York. The text of the advertisement states that the amount of a certain type of cholesterol, known as high density lipoproteins ["HDL"], in the blood is related to an individual's susceptibility to heart disease. The advertisement also states that Metpath can perform a laboratory test to measure HDL levels in the blood and concludes with the statement: "And even though all laboratory tests must be ordered by a physician, we thought you should know something about us."[3]

Defendants responded to Metpath's inquiries that publication of the advertise-

---

**1.** Pursuant to the New York City Charter, the New York City Health Code "shall have the force and effect of law." N.Y.City Charter § 558(a) (1977). The provisions of the City Health Code are enacted by the Board of Health of the New York City Department of Health and are more akin to "regulations" than to "statutes," the latter term implying legislative action. *See* N.Y.City Charter § 558(b), (c), (e), (f) (1977).

**2.** Metpath actually sent defendants two slightly different proposed advertisements. Affidavit of Gary J. Cohan ¶ 10, at 6, *Metpath Inc. v. Imperato,* No. 78 Civ. 1016 (JMC) (S.D.N.Y., filed March 8, 1978). Both advertisements are included as Appendices A and B to this Opinion. The Court deems the differences in these advertisements immaterial to the resolution of this dispute.

**3.** Appendix A; *see* note 2 *supra.*

ment would be a violation of the regulation and could result in revocation of Metpath's clinical laboratory permit as well as criminal prosecution.[4]

Based upon defendants' negative response, Metpath commenced the instant suit, by order to show cause, seeking to declare the regulation unconstitutional. On consent of the parties, trial on the merits was advanced and consolidated with the hearing on Metpath's application for a preliminary injunction. Fed.R.Civ.P. 65(a)(2).

At a meeting of the New York City Board of Health held subsequent to the filing of this action, its members officially decided that Metpath's publication of the proposed advertisement, in a newspaper of general circulation within the City of New York, would violate the regulation.

## DISCUSSION

A series of recent Supreme Court opinions establishes beyond peradventure that "commercial" speech is entitled to the protections of the first amendment to the Constitution.[5] In the most recent of these opinions, Mr. Justice Blackmun, speaking for the Court, observed

> that our cases long have protected speech even though it is in the form of a paid advertisement; in a form that is sold for profit; or in the form of a solicitation to pay or contribute money. If commercial speech is to be distinguished, it "must be distinguished by its content." But a consideration of competing interests reinforce[s] our view that such speech should not be withdrawn from protection merely because it propose[s] a mundane commercial transaction. Even though the speaker's interest is largely economic, the Court has protected such speech in certain contexts. The listener's interest is

substantial: the consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue. Moreover, significant societal interests are served by such speech. Advertising, though entirely commercial, may often carry information of import to significant issues of the day. And commercial speech serves to inform the public of the availability, nature, and prices of products and services, and thus performs an indispensable role in the allocation of resources in a free enterprise system. In short, such speech serves individual and societal interests in assuring informed and reliable decision-making.

*Bates v. State Bar of Arizona,* 433 U.S. 350, 363–64, 97 S.Ct. 2691, 2698, 53 L.Ed.2d 810 (1977) (citations omitted), *quoting Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 761, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

The task for the Court is to assess the public first amendment interest in the free flow of the information contained in Metpath's advertisement and to determine whether that interest is outweighed by the public interest allegedly served by the regulation. *Bigelow v. Virginia,* 421 U.S. 809, 826, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).[6]

Both Metpath and the public have significant first amendment interests in the free flow of information concerning the relationship between heart disease and HDL levels in the blood. First, the Metpath advertisement contains information concerning scientific studies of "general public interest." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 764–65, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Second, Metpath's economic interest in advertising its services does not disqualify it from protection under the first

---

4. *See* N.Y.Health Code §§ 3.07, 3.12, 13.33(a)(7) (1973); N.Y.City Charter § 558(d) (1977) ("Any violation of the health code shall be treated and punished as a misdemeanor. . . . ").

5. *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Linmark Associates v. Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977); *Virginia State Bd.*

*of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).

6. See, in this regard, the comments of Mr. Justice Black in *Time, Inc. v. Hill,* 385 U.S. 374, 400, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) (Black & Douglas, JJ., concurring).

amendment. *Id.* at 762–63, 96 S.Ct. 1817. Third, the free flow of information concerning the availability of services is essential to the individual economic decisions that form the basis of our free enterprise system. *Id.* at 765, 96 S.Ct. 1817. Finally, defendants have conceded for the purposes of this proceeding that the contents of Metpath's advertisement are factually accurate.[7]

Defendants argue that, since the regulation does not prohibit Metpath from advertising in medical or scientific journals, the regulation should be viewed as a restriction on the "time, place, or manner of speech." *See Linmark Associates v. Willingboro,* 431 U.S. 85, 93–94, 97 S.Ct. 1614, 1618, 52 L.Ed.2d 155 (1977). It is clear, however, that the regulation is not directed at the form of speech but rather at the identity of the listener: all advertising to the general public is proscribed. Similarly, Metpath's ability to communicate directly with physicians cannot be deemed an alternative method of communicating with the general public. Individuals who do not see a doctor would be deprived of the information entirely. Others would not receive the information until their next doctor visit and then, only if the physician chose to disclose it.

There remains the task of determining whether these first amendment interests are outweighed by the public interest allegedly served by the regulation. Defendants argue that the evil the regulation seeks to prevent is

> the alluring promise of relief, the raising of false hopes, the persuading of a doctor to run a test which in his opinion is not needed, will not help [the doctor] diag-

nose the patient any more and won't tell him a darn thing different to do about how he should treat the patient.[8]

*Citing Semler v. Oregon State Board of Dental Examiners,* 294 U.S. 608, 612, 55 S.Ct. 570, 79 L.Ed. 1086 (1935), defendants contend that the regulation is a valid exercise of the state's police power.

Initially, the Court does not deem a legitimate public interest the protection of doctors from annoying inquiries by their patients. In any event, this alleged public interest is clearly outweighed by the interests protected by the first amendment.

Defendants' reliance on the forty-three year old Supreme Court opinion in *Semler, supra,* is misplaced, since the state's interest in insulating the public from "false hopes" is not at issue in this dispute. All concede that false, deceptive, or misleading advertising is not protected by the first amendment,[9] but defendants maintain that they may legitimately prohibit clinical laboratories from disseminating completely accurate information to the general public.[10] Additionally, no first amendment claim was presented to the Court in *Semler,* and it is questionable whether the Court would reach the same result were the *Semler* case to be decided today.[11]

■ Defendants next argue that Metpath's publication of the advertisement would constitute an attack on other provisions of the Health Code. These other regulations[12] provide that clinical laboratories may conduct tests only at the request of a licensed physician and that the results of such tests may be reported only to the doctor who authorized them.[13] The validity

---

7. Transcript of proceedings, at 14, *Metpath Inc. v. Imperato,* No. 78 Civ. 1016 (JMC) (S.D.N.Y., April 10, 1978) [hereinafter cited as "Hearing Transcript"].

8. Hearing Transcript, *supra* note 7, at 11.

9. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771–72, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Warner-Lambert Co. v. FTC,* 562 F.2d 749, 758–59 (D.C.Cir. 1977); N.Y.Gen. Business Law § 350 (McKinney 1968); N.Y.Penal Law § 190.20 (McKinney 1975).

10. *See* Hearing Transcript, *supra* note 7, at 14.

11. *See* note 5 *supra.*

12. N.Y.City Health Code § 13.21(b), (c) (1973).

13. Throughout this proceeding the bulk of defendants' argument in support of the regulation has been based upon this provision of the Health Code. For example, a representative of defendant Board of Health interpreted Metpath's position as follows:

> It seems to me that Metpath is questioning the wisdom of the provision of the Health

or wisdom of these restrictions is irrelevant to the instant dispute. Metpath disclaims any challenge to these other regulations [14] and in fact includes in its proposed advertisement that "all laboratory tests must be ordered by a physician." [15]

■ Finally, in a somewhat related argument, defendants attempt to justify the regulation as follows:

> The interest served is to protect the health and the purse of the private citizen as well as the public treasury, by not permitting the clinical laboratories to determine what clinical tests to perform on a person and also to prevent unnecessary and useless tests that the clinical laboratory would perform in order to reap financial profits.[16]

Assuming, without deciding, that the state has a legitimate interest in determining the type of medical testing or treatment it will allow to be performed on its citizens, cf. *Rizzo v. United States,* 432 F.Supp. 356, 358 (E.D.N.Y.1977) (Constantino, J.), that interest is not advanced by the regulation challenged in this suit. A lifting of the advertising ban would neither permit "the clinical laboratories to determine what clinical tests to perform on a person" nor permit

them to perform "unnecessary and useless tests." Defendants' regulatory scheme allows only licensed physicians to authorize clinical laboratory tests; if defendants believe "unnecessary and useless" tests are being performed, their quarrel lies with the medical profession, not with Metpath.[17]

Defendants raise the spectre of physicians deluged with patients demanding that their doctors authorize HDL tests—all as a result of advertisements such as that proffered by Metpath.[18] The fallacy in this argument was exposed by the Supreme Court:

> [T]he argument assumes that the public is not sophisticated enough to realize the limitations of advertising, and that the public is better kept in ignorance than trusted with correct but incomplete information. We suspect the argument rests on an underestimation of the public. In any event, we view as dubious any justification that is based on the benefits of public ignorance.

*Bates v. State Bar of Arizona,* 433 U.S. 350, 374–75, 97 S.Ct. 2691, 2704, 53 L.Ed.2d 810 (1977). Nor does this Court denigrate Metpath's desire to "reap financial profits" as

---

Code requiring a physician's order for a particular test and instead seems to claim that perhaps the average layman is competent enough to know whether he needs an HDL test and to request his physician to have such a test made. Clearly, the average layman is not competent to know what test should be done and the average layman is not competent to properly evaluate the results of such a test.

Affidavit of Bernard Davidow ¶ 11, at 6, *Metpath Inc. v. Imperato,* No. 78 Civ. 1016 (JMC) (S.D.N.Y., filed April 4, 1978).

14. *See* Complaint ¶ 9, at 4–5, *Metpath Inc. v. Imperato,* No. 78 Civ. 1016 (JMC) (S.D.N.Y., filed March 8, 1978); Affidavit of Charles H. Miller ¶ 10, at 6–7, *Metpath Inc. v. Imperato,* No. 78 Civ. 1016 (JMC) (S.D.N.Y., filed April 5, 1978).

15. Appendix A; *see* note 2 *supra.*

16. Defendants' Memorandum of Law, at 11, *Metpath Inc. v. Imperato,* No. 78 Civ. 1016 (JMC) (S.D.N.Y., filed April 4, 1978).

17. In this regard, defendants have directed the Court's attention to a recent United States Sen-

ate Subcommittee Report. Senate Special Comm. on Aging, Subcomm. on Long-Term Care, Fraud and Abuse Among Clinical Laboratories, No. 94–944, 94th Cong., 2d Sess. (1976) ["Senate Report"]. The Senate Report details instances of widespread Medicaid fraud by clinical laboratories involving kickbacks to physicians and overpricing. After an intensive six-month investigation, *id.* at 47, the subcommittee did not recommend to the Congress any restrictions on advertising by clinical laboratories, *id.* at 49–50. More to the point, the Senate Report states that, according to Metpath's board chairman's testimony before the New Jersey Commission of Investigations in 1975, the company's New Jersey Medicaid revenues made up only a small part of its business because Metpath refused to participate in kickback arrangements. *Id.* at 38, 47.

18. Not only are these arguments irrelevant to the question before the Court but they also call into question whether defendants' loyalty lies with the interests of the medical profession or with the interests of the people of the City of New York.

**120**

such motivation is the basis of our free enterprise economy.

## CONCLUSION

In sum, the public interest allegedly served by this regulation causes no perceptible movement when placed in the scales opposite the public interest served by the first amendment to the Constitution. Consequently, the regulation challenged in this suit is unconstitutional on its face.

The Court is aware that new problems may result from an invalidation of defendants' ban on advertising to the general public. Most dangers will be alleviated, however, by the state's power to proscribe false, deceptive, or misleading advertising.[19] And, the clinical laboratory industry's instinct for self-preservation will encourage it to monitor closely its public advertising so as to maintain its protection under the Constitution. Defendants can no doubt be counted on for vigilance in punishing any overstepping. As to other potential prob-

lems, the suppression of information, in order to avoid its misuse, is a choice not open to defendants or to the Court: "It is precisely this kind of choice . . . that the First Amendment makes for us." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 770, 96 S.Ct. 1817, 1829, 48 L.Ed.2d 346 (1976).

Accordingly, the Clerk of the Court is directed to enter judgment declaring New York City Health Code § 13.21(h) unconstitutional and enjoining defendants from enforcing the prohibition against advertising to the public by clinical laboratories, as contained in that regulation.

Upon request of defendants, operation of the judgment is stayed, provided a prompt appeal is taken.[20]

The foregoing are the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

SO ORDERED.

Appendix to follow.

---

**19.** *See Bates v. State Bar of Arizona,* 433 U.S. 350, 383–84, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); N.Y.Gen. Business Law § 350 (McKinney 1968); N.Y.Penal Law § 190.20 (McKinney 1975).

**20.** [Stay vacated. Appeal voluntarily discontinued by stipulation and order, *Metpath Inc. v. Imperato,* 78 Civ. 1016 (JMC) (Filed May 18, 1978).]