John K. DEWEY, D.D.S.

v.

## LOUISIANA STATE BOARD OF DENTISTRY.

Civ. A. No. 78–521.

United States District Court,
E. D. Louisiana.

Dec. 7, 1978.

William S. Poole, Jr., Adams and Reese, New Orleans, La., for plaintiff.

James P. Screen, Anthony J. Milazzo, Jr., Norman J. Robinson, Jr., New Orleans, La., for defendant.

### MEMORANDUM OPINION

EDWARD J. BOYLE, Sr., District Judge:

We are called upon to determine the constitutionality of certain provisions of the

Louisiana Revised Statutes prohibiting advertising by dentists.[1] The matter has been submitted for adjudication on the record and memoranda of counsel.[2] We find LSA–R.S. 37:775(8) and (14) and LSA–R.S. 37:776(12), to the extent they relate to truthful newspaper advertisements concerning the availability and cost of routine dental services, to be violative of the First Amendment of the United States Constitution made applicable to the State through the Fourteenth.

The plaintiff is a dentist duly licensed and registered by the defendant, Louisiana State Board of Dentistry [Board] to practice, and practicing, dentistry in Louisiana. The Board has the responsibility of enforcing the statute under attack. LSA–R.S. 37:751 *et seq.* On February 16, 1978, plaintiff ran in local daily newspaper and other publications advertisements of the following tenor:

DENTISTRY AT

REASONABLE PRICES

UPPER DENTURE $145.00

Phone: 367–0142
DENTAL SERVICE, INC.

310 Opelousas Avenue

New Orleans, Louisiana 70114[3]

The Opelousas Avenue address is the location of plaintiff's clinic which he states,

without contradiction, is located in "an area of low income, welfare participants and other financially disadvantaged persons." He also practices his profession at a second office located in another community where his ". . . clientele . . . mostly does not include . . . [such] persons." He has not advertised his services at the latter office.[4]

The plaintiff contends that under the rationale of *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), advertisement of routine dental services is protected by the First Amendment. The defendant contends there are no routine dental services and that advertisement of claimed routine services is inherently misleading.

■ Of course, First Amendment protection of commercial free speech extends only to truthful advertising. *Bates,* supra, p. 2709. False, deceptive or misleading advertising is subject to restraint, and the State's power to proscribe same is undeniable. *Bates,* supra, pp. 2708–09. *See also Metpath Inc. v. Imperato,* 450 F.Supp. 115, 120 (S.D.N.Y.1978).

To support its claim that there are no routine dental services and that advertising of claimed routine services would be misleading, defendant has submitted, through affidavits, expert opinions of three dentists[5] to show that advertising of services involving extractions, cleaning, dentures and denture repair, is misleading and a

1. The prayer of the complaint asks that LSA–R.S. 37:775 only be declared unconstitutional. Record Doc. # 1. In his reply memorandum (*see* Record Doc. # 19) to defendant's memorandum plaintiff "contends that LSA–R.S. 37:775 and 776 be declared unconstitutional insofar as they in any way regulate the advertising by newspaper of the price and availability of dental services as advertised and rendered by the plaintiff." The latter contention both broadens and limits the original relief sought. We consider and act with respect to only those provisions of the statutes as they may relate to newspaper advertising.

2. *See* Minute Entry of April 12, 1978, Record Doc. # 3.

3. *See* ¶ VI of and Exhibit A to the Complaint, Record Doc. # 1. For other types of plaintiff's advertisements *see* Exhibits 1 and 3 to plaintiff's Statement of Facts, Record Doc. # 8.

4. *See* ¶¶ 5 and 23 of plaintiff's affidavit attached to plaintiff's Statement of Facts, Record Doc. # 8.

5. All present impressive qualifications, notwithstanding plaintiff's accurate claim that Drs. Copping, Rayson and Wirth left the practice in 1970, 1962 and 1972, respectively. *See* Record Doc. # 10 for the vitae of each.

"come-on" because the service required may be beyond the normal time and complexity on which the advertised price was structured, the patient will conceivably be encouraged to receive treatment at a more expensive price level, and many of the enumerated services are dependent upon another service to complete the advertised procedures (Copping and Wirth. *See* Record Doc. # 10), because (a) there are many factors which the dentist must consider before procedures, involving such things as cleanings, fillings and dentures, which may be considered routine by patients, can be accomplished, (b) subsequent adjustments to dentures are required, but the advertisement does not indicate this necessity nor whether an additional charge would be made therefor, (c) definition of a "normal extraction" is impossible since the simplest extraction for a patient who has other physical problems would present a major patient management problem (Rayson and Wirth. *See* Record Doc. # 10) and (d) even "cleaning" of teeth has many variables and demands (Wirth. *See* Record Doc. # 10).[6]

In addition to the no routine dental service and inherently misleading arguments, defendant urges several of similar arguments which were struck down in *Bates,* supra, and *Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), e. g., the adverse effect on professionalism, undesirable economic effects of advertising and adverse effect of advertising on the quality of services. Aside from the fact that the evidence does not support the defendant's claims, as to those alleged effects, *Bates,* supra, pp. 2701–06, disposed of these arguments with respect to the legal profession contrary to the position of defendant's counterpart there—the Bar Association. Generally, we conclude that the expressions of Mr. Justice Blackmun in *Bates* to the extent applicable here are dispositive of those arguments as to the dental profession.

The State, of course, will retain its regulatory jurisdiction of the dental profession. We are confident that it can and will deal effectively with any "unscrupulous hawkers who see the profession as a purely money making pursuit" should any gravitate to dentistry, as defendant suggests,[7] without support in the evidence, would be the case, when the present overbroad proscription of all advertising is replaced by constitutional regulation of dental advertising. Similarly, the State may effectively deal with any advertising dentist who would not exercise the degree of professional competence in rendering a permissibly advertised service at the advertised price as would be required and necessary in rendering such service, when unadvertised, to a patient not responding to any advertisement. If he did not as a general course of conduct, patient and public reaction, by withholding their patronage, to such a fraud would likely soon cause him to end such practice or bring his career as a dentist to a close if the State did not earlier do so in accord with available disciplinary procedures.

Contrary to defendant's assertion that no dental services are routine and the opinions of its expert witnesses, there is evidence that dentists themselves recognize that some dental services may be routine. Indeed, plaintiff argues that defendant itself has recognized that there are dental services so routine that defendant's Rules and Regulations allow a mere dental hygienist to perform them. Among others, oral prophylaxsis (cleaning), deep scaling, root planing, and hand and mechanical polishing may be performed by the hygienist. *See* Attachment B to plaintiff's Memorandum.

The evidence clearly establishes that the dentists' professional associations, national and state, their publications and writers have recognized that there are routine dental services.

---

**6.** Apparently, defendant has receded somewhat from its claim that there are no routine dental services for we find in its memorandum (Record Doc. # 17, p. 2) the statement that "*While certain actions in certain treatments may be routine,* the degree of care and treatment of each dental patient is personal to that patient and this applies even in the fitting of dentures."

**7.** *See* defendant's Memorandum, Record Doc. # 17, p. 5.

The American Dental Association News of October 31, 1977 states:

> The *Bates* decision, which had broad implications for the learned professions, addressed the matter of advertising the availability of "routine" services and fees. At its August session, the ADA Board established a special ad hoc committee to develop guidelines for defining "routine" dental services. The House received a report of the committee's work entitled "Guidelines for state boards on the definition of routine dental services," approved it, and directed that it be distributed to all state boards.

Exhibit 12. Subsequently, the ADA House of Delegates approved the Committee's report and directed that the "Guidelines for State Boards on the Definition of Routine Dental Services" be distributed to all state boards. *See* Exhibits Nos. 27 and 28. We note also that The Journal of the American Dental Association, November 1977 issue, reported on resolutions adopted by the ADA House of Delegates as follows:

> In the matter of dentist advertising, the House adopted a resolution "that constituent and component societies of the American Dental Association should immediately cease initiation of any disciplinary proceedings against any members who only advertise in the public press the availability of their services and the fees which they would charge for routine dental procedures."

The House also adopted a related resolution which states "that dentists who advertise their services and fees in a manner that is consistent with the decision of the United States Supreme Court in the case of *Bates, et al. vs [v.] State Bar of Arizona*, 443 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), if otherwise acceptable for membership, should now be regarded as eligible for admission to membership in the American Dental Association and its constituent and component societies."

*See* Exhibit 28.

The ADA approved "Guidelines for State Boards of Dental Examiners on the Definition of Routine Dental Services for Purposes of Dentists' Advertisements" are part of the evidence herein as Exhibit 34.[8]

■ The evidence submitted by the plaintiff convinces us that at least some dental services are susceptible to being classified as routine services within the purview of *Bates* and truthful newspaper advertising thereof and the price therefor is commercial speech entitled to First Amendment protection.[9] *Bates* and *Virginia State Board*, supra; *Louisiana Consumers League v. Loui-*

---

8. Plaintiff has alleged that the ADA guidelines were transmitted to the defendant. (*See* Plaintiff's Statement of Facts at # 12). We find no denial of that allegation in the record. In light of the Board's defense of this action, it is apparent that, if in fact defendant did receive the guidelines, it has chosen not to implement them.

9. The Attorney General of the State of Louisiana, in his Opinion No. 78–157, has concluded ". . . that La.R.S. 37:775(8) is both overly broad and ambiguous, and bears no reasonable relationship to the health, safety or welfare of the citizens of Louisiana. Furthermore, said statute denies the public of its right to receive vital information guaranteed by the free speech provisions of the First Amendment to the United States Constitution. Federal jurisprudence regarding professional advertising by attorneys, pharmacists and optometrists have held that advertising the price at which certain routine services will be performed is constitutionally protected. See *Bates v. State Bar Association of Arizona* [433 U.S. 350], 97 S.Ct. 2691

[53 L.Ed.2d 810]; *Louisiana Consumers League, Inc., et al. v. Louisiana State Board of Optometry Examiners et al.*, U.S.D.C., E.D., CA No. 76–2921 (wherein R.S. 37:1063 were declared unconstitutional and enforcement enjoined); *John Webb et al. v. Salvatore D'Angelo and Louisiana Pharmacy Board*, U.S.D.C., E.D., CA No. 74–3431 (wherein R.S. 37:1225(11) was declared unconstitutional and enforcement enjoined).

Clearly any attempt to enforce R.S. 37:775 and 776, or the penal provisions R.S. 37:788 and 789 against truthful and informative advertising would be subject to constitutional attack and in our opinion, in bad faith. Therefore, we advise that careful consideration be given to corrective legislation which would allow the advertising of the prices at which routine dental services will be performed. We note that the Board of Dentistry presently has the authority to adopt rules and regulations defining 'routine services' under R.S. 37:760(9)." *See* Exhibit 24.

*siana State Board of Optometry Examiners,* 557 F.2d 473 (5 Cir. 1977).

■ The defendant's argument that advertising of dental services is inherently misleading must fall—as the Bar's inherently misleading argument in *Bates* fell and for much the same reasons. So long as the dentist performs all necessary component services in order to complete the routine service at the advertised price, even though "the precise service demanded in each task may vary slightly," the advertising would not be misleading. *See Bates,* supra, at pp. 2703–2705.

■ The defendant retains the power to compel rendition of the services with competence and within the standard of expertise pertaining in the profession. For a dentist not to so render his advertised services would result in the advertising becoming false and misleading and subject him to disciplinary action. LSA–R.S. 37:760.

Although advertising of routine dental services may not be subjected to an all inclusive suppression, it does not follow that advertising by dentists may not be regulated in any way by the defendant. It must act to suppress false, deceptive or misleading advertising, to assure that advertising "flows both freely and clearly," and to impose reasonable restrictions on the time, place and manner of advertising. *See Bates,* supra, at p. 2709. *See also* p. 2703, Fn. 28.

■ Turning to a consideration of the advertisement of plaintiff's clinic described in the complaint,[10] the evidence establishes that the clinic regularly performs the service of providing upper dentures for a set fee and that such service involves the same basic procedures and techniques for each

such service rendered.[11] The price set for such service includes a complete upper denture and any required adjustments to insure a proper fit.[12] Such service is clearly within the definition of a routine dental service as set out in the ADA approved guidelines for state boards of dental examiners, *supra.*[13]

The evidence here would not support a conclusion that the advertised service is not composed of all recognized components thereof or that the clinic would not or has not offered and performed the essential elements of the advertised service at the advertised price. Indeed, it supports the contrary finding. Under those circumstances the final guideline requirement is met.

The advertising dentist surely will recognize that "the public and private benefits from commercial speech derive from confidence in its accuracy and reliability." *See Bates,* supra at 2709. Also, determination of the element of performance of all components of the advertised service is one peculiarly within the Board's sphere of authority in order to assure that the consumer is not misled. We note that *Bates* recognized the possibility that some "supplementation by way of warning or disclaimer or the like," might be required of advertisement of routine services in order to avoid misleading effect of the advertisement and the Board must act to regulate and restrain any practice of rendering less than all component services and to assure that the advertising flows "both freely and clearly." P. 2709.

Having found that advertisement of an upper denture is appropriate as a routine service, we turn to plaintiff's advertisement contained in Plaintiff's Exhibit No. 1. That advertisement, in addition to advertising upper dentures, offers a set price for ex-

10. *See* ¶ VI of the complaint and Exhibit A thereto. Record Doc. # 1. (Plaintiff's Exhibit 2).

11. *See* Plaintiff's Affidavit at paragraphs 11, 15, 16, 32 and 33; Plaintiff's Exhibits Nos. 19, 20 and 21.

12. *See* Plaintiff's Affidavit at paragraph 11a.

13. Such guidelines provide:

"A dental service may be considered routine for an individual practitioner if it has the following characteristics:
a. It is performed frequently in his practice.
b. It is usually provided at a set fee.
c. It is provided with little or no variance in technique.
d. It includes all professionally recognized components within generally accepted standards."
*See* Plaintiff's Exhibit No. 34.

tractions in connection therewith as well as "one day processed relines" and "one half day repairs."

The evidence establishes that extractions in connection with upper denture implacement, relines, and repairs are also regularly performed by plaintiff's clinic for a set fee and that such services involve the same basic procedures and techniques for each service rendered.[14]

Accordingly, with the same note as to the requirement of regulation in connection with assuring that all component parts of the service are provided that was set out in connection with consideration of Exhibit A to the complaint, the services advertised in Plaintiff's Exhibit No. 1 are routine within the ADA guidelines.

The advertisement contained in Exhibit 1, in addition to disclosing the prices for certain services, also sets out the availability of certain services—relines and repairs— without statement of price, stating only a time period within which such services may be obtained. Likewise the advertisement contained in Plaintiff's Exhibit No. 3 does not set forth prices, but advertises "economical dental services." However, we are of the opinion that such advertisements do not fall outside the scope of the constitutional protection recognized in *Bates*, supra, merely because they do not contain *price* advertising of routine services.

The services referred to without quotation of price in Plaintiff's Exhibit 1 are, as previously set out, routine services. The advertisement represents that such services can be obtained within a stated period. Such advertisement states an available service. It allows comparison by the public as to the most efficient means of receiving the advertised service. It is equally susceptible of regulation should the advertised service not be performed within the stated period thereby rendering the advertisement misleading.

The advertisement contained in Plaintiff's Exhibit 3 is, absent the fee information, strikingly similar to the legal clinic advertisement approved in *Bates*, supra, p. 2710. It announces the name of the provider of "complete dental services," the address of the clinic, its hours, and gives a telephone number for inquiries.

Both Plaintiff's Exhibits 1 and 3 direct the public to the availability of the advertised service. Informing the public of the availability of services is a function of commercial speech. *Bates*, supra at p. 2699. While the advertisement of routine services without a statement of price may be in some respects incomplete, so long as the information is correct, it serves to inform the public. It is for the Board to insure that omissions do not occur which "have the effect of presenting an inaccurate picture." *See Bates*, supra at p. 2704.

■ The record in this case does not disclose that either Plaintiff's Exhibit 1 or 3 has, by its failure to state a price for the advertised service, made a misleading omission. We find that these advertisements are protected and therefore permissible.

Accordingly, we hold LSA–R.S. 37:775(8) and (14) and LSA–R.S. 37:776(12) to be violative of the First Amendment of the United States Constitution to the extent that they relate to truthful newspaper advertisement concerning the availability and/or cost of routine dental services.

We note that plaintiff in his complaint has not prayed for a permanent injunction. In addition to a declaration of the unconstitutionality of LSA–R.S. 37:775, he has prayed only for a temporary restraining order and a preliminary injunction restraining the Board from instituting proceedings for suspension or revocation of his license and the taking of any action to further prevent advertisements as the one appearing in Exhibit A to the complaint.[15] However, by means of plaintiff's memorandum, he requests that defendant be permanently

14. *See* Footnote 11.

15. Those injunctive issues were mooted by the agreement of defendant to withhold any action

with respect to plaintiff until this cause has been adjudicated on the merits. *See* Minute Entry of April 12, 1978, Record Doc. # 3.

138

enjoined from enforcing the provisions of LSA–R.S. 37:775 as against him.[16] There having been no objection to plaintiff's request for permanent injunction in the event he prevailed on the merits, and plaintiff having prayed "for all the legal and equitable relief," the Court will grant the permanent injunction. F.R.C.P. 8(f).

The Clerk will enter judgment herein in favor of plaintiff and against defendant declaring that LSA–R.S. 37:775(8) and (14) and LSA–R.S. 37:776(12), to the extent that said provisions relate to truthful newspaper advertising concerning the availability and/or costs of routine dental services, are violative of the First Amendment of the United States Constitution.

Further judgment shall issue in favor of plaintiff and against defendant permanently enjoining defendant from enforcing the aforesaid statutory provisions as to the plaintiff on account of truthful newspaper advertisement concerning the availability and/or costs of routine dental services.

Defendant shall bear all costs of these proceedings.

---

**16.** *See* Record Doc. # 16 at p. 22.