MISSOURI DENTAL BOARD,
Respondent,

v.

James R. ALEXANDER and Denture
Clinics of Mid-America, Appellants.

No. 63217.

Supreme Court of Missouri,
En Banc.

March 9, 1982.

Les D. Wight, Independence, for appellants.

John Ashcroft, Atty. Gen., Gregory W. Schroeder, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Respondent Missouri Dental Board petitioned the Circuit Court of Jackson County for an order finding defendants James R. Alexander and Denture Clinics of Mid-America to have been practicing dentistry in violation of § 332.081, RSMo 1978 [1] and

---

1. 332.081. Unlicensed or unregistered practice prohibited.—No person or other entity shall practice dentistry in Missouri as defined in section 332.071 unless and until the board has issued to him a certificate certifying that he has been duly registered as a dentist in Missouri and unless and until the board has issued to him a license, to be renewed each year as hereinafter provided, to practice dentistry in Missouri; but nothing in this chapter shall be so construed as to make it unlawful for a legally qualified and licensed physician or surgeon, who does not practice dentistry as a specialty, from extracting teeth, or to make it unlawful for a dentist licensed in a state other than Missouri from making a clinical demonstration before a meeting of dentists in Missouri, or to make it unlawful for dental students in any accredited dental school to practice dentistry under the personal direction of instructors, or to make it unlawful for any duly registered and licensed dental hygienist in Missouri to practice as a dental hygienist as defined in section 332.091 or to make it unlawful for persons to practice dentistry in the United States armed services or in or for the United States Public Health Service, or in or for the United States Veterans Bureau, or to make it unlawful to teach in an accredited dental school, or to make it unlawful for a duly qualified anesthesiologist or anesthetist to administer an anesthetic in connection with dental services or dental surgery.

Section 332.081, RSMo 1978.

All statutory references are to RSMo 1978 unless otherwise indicated.

enjoining defendants from continuing this illegal practice. *See* § 332.121.[2] The trial court granted the relief sought and defendants appealed to the Missouri Court of Appeals, Western District, which transferred the cause before opinion to this Court because it involves the validity of Missouri statutes. Mo.Const. art. V, § 3, (as amended 1976). We affirm.

Much of the evidence was undisputed. In narrated form, the trial court found the facts to be as follows. Appellant, James R. Alexander does not hold and never has held a license to practice dentistry in the state of Missouri. *See* Chapter 332 RSMo. Appellant Alexander owns and operates as a sole proprietorship the business known as Denture Clinics of Mid-America, (hereafter, Denture Clinics), located at 117 West 23rd Street, Independence, Missouri. Appellant has employed at least two other individuals who participate in the operations of this business. Appellant and his employees refer to themselves as "denturists". Since August 1978, appellants have been constructing, repairing, and adjusting prosthetic dentures and prosthetic partial dentures without written uniform laboratory work orders signed by a licensed dentist and without impressions furnished by a licensed dentist. Appellants also have been selling and delivering dentures and partial dentures directly to the public since August 1978. Appellants have advertised the services they perform by placing advertisements in newspapers serving Jackson County, including the Independence Examiner and the Lexington Shopper. On at least two separate occasions, after supplying a patient with dentures, appellant Alexander signed the insurance forms for each patient on the line designated for the signature of the "treating dentist".

Both respondent and appellants called witnesses who described appellants' general operation. When a new customer arrives at the Denture Clinics, Alexander or one of the other employees requests a medical history and examines the customer's mouth by means of visual observation and palpation by hand. The denturist makes a cursory diagnosis of the health and condition of the customer's mouth and then recommends and offers to supply the prosthetic appliances which he deems appropriate. Upon receipt of a partial payment, the denturist takes an impression of the customer's mouth and constructs a denture or partial denture. When the customer returns, the denture is placed in his mouth or is given to the customer to be placed in his mouth after his remaining teeth are extracted by a dentist. A customer is allowed to return for adjustments of dentures without added charge.

While appellants disputed some of the evidence, there was substantial evidence to support the following. Any failure to diagnose the existence of oral lesions or the necessity of oral surgery prior to the insertion of a prosthetic appliance could jeopardize the health and well-being of an edentulous person. It is important to investigate in potential denture wearers the possibility of other problems such as diabetes and to be aware of the medical and dental history of each patient. Only a dentist has the education and training necessary to examine fully and diagnose the full range of oral health problems inherent in a prospective denture wearer. The making of impressions of patients' mouths require a significant amount of training and expertise. An improperly constructed or fitted denture can cause considerable pain to the wearer. Such a denture can also lead to the development of oral lesions and aggravate other

---

**2.**  332.121. Board may ask court to enjoin illegal practice—venue—1. The board is authorized in its own name to apply for injunctive relief in the manner now provided for in civil cases to prevent the practice of dentistry, as defined in section 332.071, by any person or other entity, not exempt under the provisions of section 332.081, who under the provisions of this chapter is not a registered and currently licensed dentist in Missouri, or

to prevent one practicing as a dental hygienist as defined in section 332.091, not exempt under the provisions of section 332.101, who under the provisions of this chapter is not a duly registered and currently licensed dental hygienist in Missouri. In any such proceedings the board need not allege or prove that there is no adequate remedy at law or that substantial or irreparable damage will result unless an injunction issued.

oral health problems. A poorly constructed partial denture can cause the premature loss of remaining healthy teeth.

The field of prosthodontics, which includes the constructing and applying of dentures, clearly affects the health and well-being of persons who have lost their natural teeth. The current delivery system ensures that a licensed dentist is involved to some extent in every step leading to the construction of a denture and places full responsibility with the dentist for every completed denture and its eventual effect upon the patient's health.

## I

Appellant challenges the sufficiency of the evidence to support the trial court's findings of fact. In stating this first point, appellant fails to conform to the requirements of Rule 84.04(d) in that he neither states precisely the findings of fact to which he objects nor wherein and why he claims them to be erroneous. *See Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978). We have reviewed the record, examined the findings, and conclude that the trial court's findings are supported by substantial evidence. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); Rule 73.01(c).

## II

Appellant contends that §§ 332.071 [3] and 332.081 as applied to appellants constitute an unauthorized exercise of the state's po-

3.   332.071. Practice of dentistry defined.—A person or other entity 'practices dentistry' within the meaning of this chapter who:

(1) Undertakes to do or perform dental work or dental services or dental operations or oral surgery, by any means or methods, gratuitously or for a salary or fee or other reward, paid directly or indirectly to him or to any other person or entity;

(2) Diagnoses or professes to diagnose, prescribes for or professes to prescribe for, treats or professes to treat, any disease, pain, deformity, deficiency, injury or physical condition of human teeth or adjacent structures or treats or professes to treat any disease or disorder or lesions of the oral regions;

(3) Attempts to or does replace or restore a part or portions of a human tooth;

(4) Attempts to or does extract human teeth or attempts to or does correct malformations of human teeth or jaws;

(5) Attempts to or does adjust an appliance or appliances for use in or used in connection with malposed teeth in the human mouth;

. . . .

(10) Uses or permits to be used for his benefit or for the benefit of any other person or other entity the following titles or words in connection with his name: 'Doctor', 'Dentist', 'Dr.', 'D.D.S.', or 'D.M.D.', or any other letters, titles, degrees or descriptive matter which directly or indirectly indicate or imply that he is willing or able to perform any type of dental service for any person or persons, or uses or permits the use of for his benefit or for the benefit of any other person or other entity any card, directory, poster, sign or any other means by which he indicates or implies or represents that he is willing or able to perform any type of dental services or operation for any person;

(11) Directly or indirectly owns, leases, operates, maintains, manages or conducts an office or establishment of any kind in which dental services or dental operations of any kind are performed for any purpose: but this section shall not be construed to prevent owners or lessees of real estate from lawfully leasing premises to those who are qualified to practice dentistry within the meaning of this chapter;

(12) Constructs, supplies, reproduces or repairs any prosthetic denture, bridge, artificial restoration, appliance or other structure to be used or worn as a substitute for natural teeth, except when one not a registered and licensed dentist does so pursuant to a written uniform laboratory work order, in the form to be prescribed by the board and copies of which shall be retained by the nondentist for two years, of a dentist registered and currently licensed in Missouri and which said substitute above described is constructed upon or by use of casts or models made from an impression furnished by a dentist registered and currently licensed in Missouri;

(13) Attempts to or does place any substitute described in subdivision (12) above in a human mouth or attempts to or professes to adjust any substitute or delivers any substitute to any person other than the dentist upon whose order the work in producing the substitute was performed;

(14) Advertises, solicits, or offers to or does sell or deliver any substitute described in subdivision (12) above or offers to or does sell his services in constructing, reproducing, supplying or repairing the substitute to any person other than a registered and licensed dentist in Missouri;

(15) Undertakes to do or perform any physical evaluation of a patient in his office or in a hospital, clinic, or other medical or

lice power and deny appellants equal protection and due process of law in contravention of the Fourteenth Amendment of the Constitution of the United States and of Article I, §§ 2 and 10 of the Constitution of Missouri.

> [W]e must judge the validity of the challenged ... [statute] according to the standard applicable to the exercise of police power, and the test of the validity of an exercise of police power is reasonableness. In general, the test of reasonableness is met in any case in which the object of the police measure is a proper one ... and the means adopted to accomplish that object are appropriate. The exercise of police power is presumed to be constitutionally valid; the presumption of reasonableness is with the state. The ·exercise of police power will be upheld if any state of facts either known or which could be reasonably assumed afford support for it. The party challenging certain legislation has the burden on the question of its reasonableness.

*Caesar's Health Club v. St. Louis County*, 565 S.W.2d 783, 786 (Mo.App.1978), *cert. denied*, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978) (citations omitted).

█ The general law in Missouri was stated recently in *Flower Valley Shopping Center v. St. Louis County*, 528 S.W.2d 749, 753 (Mo. banc 1975), (*quoting Bellerive Investment Co. v. Kansas City*, 321 Mo. 969, 981, 13 S.W.2d 628, 634 (1929)):

> It has been definitely and clearly established and settled, by the decisions of this court and of the federal Supreme Court, that a statute, or a municipal ordinance, which is fairly referable to the police power of the state or municipality, and which discloses upon its face, or which may be shown aliunde, to have been enacted for the protection, and in furtherance, of the peace, comfort, safety, health, morality, and general welfare of the inhabitants of the state or municipality, ... cannot be held invalid as wrong-

fully depriving the appellants of any right or privilege guaranteed by the Constitution, state or federal....

*Accord ABC Liquidators, Inc. v. Kansas City*, 322 S.W.2d 876 (Mo.1959).

> When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. See, e.g., *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude.

*New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 276 (1976). The due process clause permits great latitude to a state in the exercise of its authority to regulate its economic life, particularly the conduct of the professions. *Friedman v. Rogers*, 440 U.S. 1, 18, n.19, 99 S.Ct. 887, 898, 59 L.Ed.2d 100 (1979); *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978); *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955); *see State ex inf. Danforth v. Dale Curteman, Inc.*, 480 S.W.2d 848, 858 (Mo.1972).

█ The construction, repairing, and fitting of full and partial dentures affects the health and well-being of persons who have lost their natural teeth. The current system for providing dentures to consumers ensures that a competent, licensed dentist is involved in diagnosing the need for dentures and in preparing the model from

dental facility prior to or incident to the performance of any dental services, dental oper-

ations, or dental surgery.

which dentures are constructed. The current delivery system also ensures that full responsibility is placed upon a licensed dentist for every completed denture and its eventual effect upon the health of each denture wearer. The statutes in question are intended to protect the health and general welfare of the citizenry and utilize reasonable means to effectuate their purpose. Regulation of the practice of dentistry, particularly the providing of dentures and prostheses, has been held to be proper pursuant to a state's police power in many of our sister states. *Arizona State Board of Dental Examiners v. Hyder*, 114 Ariz. 544, 562 P.2d 717 (Banc 1977); *People ex rel. Dunbar v. Kogul*, 179 Colo. 394, 501 P.2d 738 (1972); *Clark v. Board of Dental Examiners of Georgia*, 240 Ga. 289, 240 S.E.2d 250 (1977); *Hortman v. Yarbrough*, 214 Ga. 693, 107 S.E.2d 202, 203–204 (1959); *Berry v. Koehler*, 84 Idaho 170, 369 P.2d 1010 (1961); *State ex rel. Zimmerer v. Clark*, 252 Iowa 578, 107 N.W.2d 726 (1961); *Bongers v. Madrigal*, 1 Kan.App.2d 198, 563 P.2d 515 (1977); *Cryan v. State*, 583 P.2d 1122 (Okl. Cr.1978); *Stone v. Department of Registration*, 567 P.2d 1115 (Utah 1977); *State v. Anderson*, 54 Wash.2d 156, 338 P.2d 740 (1959). *See State v. Hussey*, 381 A.2d 665 (Me.1978). We conclude that §§ 332.071 and 332.081 are a legitimate exercise of the state's police power and are not violative of the equal protection or due process clauses of the Fourteenth Amendment of the Constitution of the United States or of Article I, §§ 2 and 10 of the Constitution of Missouri.

### III

█ Appellants assert that §§ 332.071 and 332.081, as applied to them, are unconstitutional in that they constitute a local or special law in violation of Article III, §§ 40, 41, and 42 of the Missouri Constitution and they impair the obligation of contracts and constitute an irrevocable grant of special privileges and immunities in violation of Article I, § 13 of the Missouri Constitution. A law which includes less than all who are similarly situated is special, but a law is not special if it applies to all of a given class alike and the classification is made on a reasonable basis.

*Ross v. Kansas City General Hospital and Medical Center*, 608 S.W.2d 397, 400 (Mo. banc 1980). The test for determining whether a law is special or general is

whether it appears beyond a reasonable doubt that there are no distinctive circumstances appertaining to the class with respect to which it has legislated which reasonably justify its action in restricting the operation of the law to the persons * * * to which the law is made applicable.

(Citations omitted.) *State v. Cushman*, 451 S.W.2d 17, 19 (Mo.1970). *Accord Wilson v. City of Waynesville*, 615 S.W.2d 640, 644 (Mo.App.1981). *See generally* D. Mandelker & D. Netsch, State and Local Government in a Federal System, Chapter 7 at 628 (1977). As noted above, the practice of dentistry in Missouri affects the health of Missourians, and the quality of dentistry provided depends upon the education and training of those authorized to practice dentistry. It is reasonable to classify people, for the purpose of licensing them to practice dentistry, on the basis of the amount of their education and training related to the many skills needed to function effectively as a dentist. Sections 332.071 and 332.081 apply equally throughout Missouri to all classified on this basis. We hold that §§ 332.071 and 332.081 do not constitute a local or special law in violation of Article III, §§ 40, 41 and 42 of the Missouri Constitution.

█ Appellants also assert that "the definition of practicing dentistry operates unlawfully to impair the obligation of contracts by infringing the right of Mr. Alexander and other denturists to choose an occupation, while granting a special immunity from competition to dentists in the sale to the public of dentures", in violation of Article I, § 13 of the Missouri Constitution. The opportunity of becoming a licensed dentist is open to all who can meet the requirements for admission into dental school and for licensing in Missouri. The

relevant statutes do not prevent those who wish to become licensed dentists from pursuing or accomplishing that goal. Sections 332.071 and 332.081 do not grant special privileges or immunities to licensed dentists or anyone else. *See State ex rel. Atkinson v. Planned Industrial Expansion Authority*, 517 S.W.2d 36, 47 (Mo. banc 1975) (holding industrial expansion statute, which authorized planned industrial expansion authority to acquire by eminent domain private property deemed necessary for project and to sell any land in project area to a developer not to be a grant of special privileges or immunities because the opportunity of becoming a developer/purchaser was open to all who met requirements).

■ The statutes in issue were enacted and became effective in 1969. Laws of Mo.1969, p. 476. The record is void of any evidence that appellants are parties to any executory contracts entered into prior to enactment of these statutes and affected by enactment of these statutes. Article I, § 13 prohibits the state from enacting statutes which impair the rights of parties to any *existing* contract. *In re Marriage of Haggard*, 585 S.W.2d 480, 483 (Mo. banc 1979). Sections 332.071 and 332.081 are not in violation of Article I, § 13 of the Constitution of Missouri.

### IV

Appellants were charged with advertising contrary to the provisions of § 332.071(14) [4] and they in turn contend that this section of the statute is unconstitutional for the reason that it violates the first amendment guarantee of freedom of speech.

We have concluded that appellants properly may be enjoined from the dental care related acts constituting the illegal practice of dentistry as they are defined in the statutes of Missouri. §§ 332.081, 332.121 and 332.071. There is no necessity that we find

that appellants improperly advertised in order for us to sustain that finding nor is there any reason for us to assume that appellants will in the future advertise services which they are enjoined from performing pursuant to the laws of this state.

■ As we understand the section on advertising, appellants may advertise their services to registered and licensed dentists within the state who are authorized by law to order their services. We are unaware of any prohibition against appellants advertising their services to the general public so long as the advertising fairly states that they can perform the services offered only pursuant to a written work order from a dentist licensed to practice in the state of Missouri [5] and so long as the advertising otherwise is neither false or misleading and does not propose illegal transactions. *In re R.M.J.,* ——— U.S. ———, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982); *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 563–64, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980); *Friedman v. Rogers*, 440 U.S. 1, 9–10, 99 S.Ct. 887, 893–894, 59 L.Ed.2d 100 (1979); *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978); *Bates v. State Bar of Arizona*, 433 U.S. 350, 383, 97 S.Ct. 2691, 2708, 53 L.Ed.2d 810 (1977); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 772, 96 S.Ct. 1817, 1831, 48 L.Ed.2d 346 (1976), *citing Pittsburg Press Co. v. Pittsburg Commission on Human Relations*, 413 U.S. 376, 389, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669 (1973).

We believe this to be the fair import of both § 332.071(14) and paragraph seven of the order of the trial court.

The judgment of the trial court is affirmed.

All concur.

---

4. *See* note 3 *supra.*

5. *Bolton v. Kansas City Board of Healing Arts*, 473 F.Supp. 728 (D.Kan.1979); *Wall & Ochs, Inc. v. Hicks*, 469 F.Supp. 873, 874 (E.D.N.C. 1979); *Metpath, Inc. v. Myers*, 462 F.Supp. 1104 (N.D.Cal.1978); *Metpath, Inc. v. Impera-*

*to*, 450 F.Supp. 115 (S.D.N.Y.1978); *Horner-Rausch Optical Co. v. Ashley*, 547 S.W.2d 577 (Tenn.App.1976); *Amsel v. Brooks*, 141 Conn. 288, 106 A.2d 152, 158 (1954), *appeal dismissed*, 348 U.S. 880, 75 S.Ct. 125, 99 L.Ed. 693 (1954).