[No. 12483.  Department Two.  September 25, 1915.]

THE STATE OF WASHINGTON, *on the Relation of
H. O. Fishback, Insurance Commissioner,
Appellant,* v. UNIVERSAL SERVICE
AGENCY, *Respondent.*[1]

INSURANCE—CONTRACTS—NATURE OF INSURANCE—DOING INSURANCE BUSINESS. A "Universal Service Agency" corporation which contracted with dealers, druggists, and physicians for goods and services at reduced rates and sold the privileges obtained to any person or family purchasing the right thereto from the corporation, under yearly contracts, is not engaged in the insurance business, within the meaning of 3 Rem. & Bal. Code, § 6059-1, defining insurance contracts and making the essential elements (1) an insurer, (2) a consideration, (3) a person insured or his beneficiary, and (4) a hazard or peril insured against, whereby the insured or his beneficiary may suffer loss or injury; where the contracts of the corporation with the purchasers of the privileges covered no hazard or peril whereby the purchasers may suffer loss or injury which the corporation insured against, but on the contrary provided that the corporation "assumes no liability for the breach of any one or all" of the contracts with its dealers none of which it guaranteed, merely agreeing with the purchasers to use its best efforts to procure the same service from others in case of breach.

[1]Reported in 151 Pac. 768.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered August 19, 1914, upon sustaining a demurrer to the complaint, dismissing an action to forfeit the franchise of a corporation and wind up its affairs. Affirmed.

*The Attorney General* and *John M. Wilson, Assistant* (*L. L. Thompson,* of counsel), for appellant.

*Wilson & Hatfield,* for respondent.

FULLERTON, J.—This action was instituted on the relation of the insurance commissioner of the state of Washington against the Universal Service Agency, a corporation, organized under the laws of this state, to forfeit its corporate franchise and wind up its affairs. A demurrer was interposed and sustained to the complaint, and from an adverse judgment rendered thereon, the relator appeals. The grievance specially complained of in the complaint is that the respondent corporation has been, and is now, doing an insurance business without complying with the statutes regulating the doing of such business. The nature of the business conducted by the respondent can best be illustrated by setting forth the actual transactions, and this we do, although necessitating quotations from the complaint at a somewhat tedious length.

As initiatory of its business, the respondent entered into separate contracts with a dealer in shoes, a dealer in groceries, a dealer in harness, a dealer in clothing, certain dealers in drugs, and a physician, whereby the dealers agreed to enter into a contract to sell their wares, and the physician agreed to enter into a contract to sell his services, to such persons as the corporation might direct; the dealers, at stated discounts from their regular rates, and the physician, for a consideration to be paid him by the corporation. The contract with the dealers in drugs is typical of the contracts with the other dealers, and we set the same out in full:

"This memorandum of agreement made this 24th day of April, A. D. 1914, by and between the Universal Service Agency, a corporation of the state of Washington, party of the first part, and W. V. Blackwell and E. A. Isaacson, co-partners doing business under the firm name and style of Reading Drug Co. Central Drug Co. a corporation and Fred L. Janeck, as parties of the second part,

"Witnesseth: That whereas, the party of the first part proposes to act as agent of various persons in securing for them certain privileges and benefits, and

"Whereas, the parties of the second part, being each engaged in business as retail druggists in the city of North Yakima, and the custom of said persons will be of benefit to them, and will reduce their advertising expenses.

"Now Therefore, the said second parties, in consideration of the premises, agree that they and each of them will contract direct with all persons complying with the stipulations required by the first party, to fill for said persons and the members of their families dependent on them, any and all prescriptions of physicians that may be presented by the holder or any member of his family dependent on him, at a flat and uniform rate of thirty-five cents ($0.35) per prescription, for a period of one year from and after the date of said contract, provided, it be delivered in the year 1914; said contract to be evidenced by a printed form delivered to the holder by the party of the first part as follows, to-wit:

" 'We, the Reading Drug Co. a co-partnership, Central Drug Co. a corporation, and Fred L. Janeck, do hereby agree that we and each of us will fill for the holder and the members of his family dependent on him, any and all prescriptions of physicians that may be presented by the holder or any member of his family dependent on him, at a flat and uniform rate of thirty-five cents ($0.35) per prescription, for a period of one year from and after the date and delivery of this contract No. .... dated and delivered this .... day of .........., A. D. 1914.

" 'The delivery of this contract and continuing compliance with the stipulations required by the Universal Service Agency, hereto attached and made a part hereof, shall constitute an acceptance of this offer by the holder, the sufficiency of the consideration therefor being admitted. . . .'

"It being understood and agreed that a printed copy of the foregoing form, when delivered by the party of the first part and accepted by the holder, shall constitute an irrevocable offer to the holder thereof, provided that he has complied with the stipulations required of him by the party of the first part, and compliance with such stipulations shall constitute an acceptance of the terms thereof by the holder. The said second parties hereby admit the sufficiency of the consideration therefor and their liability to the holder for any breach thereof."

The contract with the physician was in the following form:

"This Memorandum of Agreement made this 15th day of April, 1914, by and between the Universal Service Agency, a corporation of the state of Washington, party of the first part, and Dr. H. B. Pratt, a licensed physician and surgeon as party of the second part,

"Witnesseth: That Whereas, the party of the first part proposes to act as agent of various persons in securing for them certain privileges and benefits and among other things, desires to procure to said various persons, reduced rates for medical services and to act as agent for certain physicians in collecting their fees,

"Now Therefore, in consideration of the premises and the mutual covenants hereinafter contained, the said party of the first part agrees that he will contract directly with all persons complying with the stipulations required by the first party and will render to them and to the members of their families dependent on them, as their names shall appear upon the card furnished by the party of the first part, certain limited professional services hereinafter defined, for a period of one year beginning two weeks from and after the date of said contract, provided it be delivered in the year 1914; said contract to be evidenced by a printed form and delivered to the holder by the party of the first part as follows, to-wit:

" 'Dr. H. B. Pratt, a licensed physician and surgeon, does hereby agree that he will furnish to the holder and to the members of his family dependent on him as their names shall appear upon the card furnished by the Universal Service Agency, and that the holder and his said family shall be entitled to all reasonable physician's services falling within the scope of duties of a physician and surgeon, including treatment of all physical diseases and ailments of every kind, na-

ture and description, excepting: first, venereal diseases; second, chronic and incurable diseases; third, major surgery. Provided, however, that the holder must at all times come to the office of the physician for treatment if physically able so to do.   That the holder shall pay to the physician one-half the regular professional fee in obstetrical cases.   That the holder shall pay one-half the usual mileage for necessary trips outside the limits of the city of North Yakima.   That the holder shall at all times be entitled to call in other physicians for consultation or assistance and pay therefor such fees as such consulting or assisting physicians may demand. Provided, further, that the expense of all medicines and appliances shall be at the expense of the holder; said services to be rendered for a period of one year beginning two weeks from and after the date and delivery of this contract number . . . . dated and delivered this . . . . day of . . . . . . . . . . . A. D. 1914.' "

"The delivery of this contract and the continued compliance with the stipulations required by the Universal Service Agency hereto attached and made a part hereof, and the strict payment of all sums required by the Universal Service Agency at the time and in the manner in said contract required, shall constitute an acceptance of this offer by the holder; the consideration for the services above enumerated being limited to the payment made by the holder to the said Universal Service Agency.   The receipt of said sums by the said Universal Service Agency in my behalf being sufficient consideration for the services herein offered and not otherwise provided for.

"Witness my hand and seal this . . . . day of April, 1914.
                                " 'Dr. H. B. Pratt.'

"It being understood and agreed that a printed copy of the foregoing form when delivered to the party of the first part and accepted by the holder, shall constitute an irrevocable offer to the holder thereof provided, that he has complied with the stipulations required of him by the party of the first part; that compliance with such stipulations shall constitute an acceptance of the terms thereof by the holder.   In full consideration of the services rendered as above provided and not otherwise provided for, the said party of the first part agrees with the party of the second part that it

14—87 WASH.

will collect from and of each person to whom said policy is delivered, the sum of $3 and the further sum of $1 for each child of the holder whose name shall appear on the card issued by the party of the first part, the said dollar for each child to be collected from the holder by the party of the first part when this contract is delivered; the further sum of $3 to be collected as follows: $1.25 within two months after delivery; $1.25 within three months after delivery; $0.50 within four months after delivery, provided that in cases where the holder shall pay the party of the first part the full amount of his premium when the policy is delivered, then the said sum of $3 shall be forthwith due and payable to the party of the second part. And provided further that if the holder shall drop his contract after the first payment of five dollars, then the party of the second part shall be entitled to the sum of $0.50 of the sum received from the said holder.

"It is further understood and agreed that the party of the first part shall make and render to the party of the second part, on or before the 10th day of each and every month, a statement of the contracts issued, the dates thereof, and the amounts due thereon, to the party of the second part, and shall thereupon pay the amounts so found due the said party of the second part; it being understood and agreed by and between the parties hereto that the party of the second part hereby agrees to contract directly with the holder to furnish the services herein specified. That the party of the first part has no interest therein except to secure acceptances of the offer herein made by the party of the second part and to collect from such persons the fees herein specified for the use and benefit of the party of the second part. And the party of the first part assumes no liability for any negligence, lack of professional skill, or failure of attention to any or all persons accepting the offer herein contained, and that the party of the second part does hereby assume all liability that may be incurred by any negligence or lack of professional skill to the holder of the contract herein offered.

"It is further understood and agreed by and between the parties hereto that the payment to the party of the first part by the holder, of the sums herein specified, shall be in full compensation of the services herein offered, except such as in said offer are excepted. That when said sums are

paid to the party of the first part, the party of the second part shall be bound to render to the holder, the services herein enumerated for the period of one year beginning two weeks from and after the date and delivery of said contract. And in the event of the failure of the party of the first part to pay said sum to the party of the second part, then the said party of the second part shall look only to the party of the first part for said sums; and that receipts of the party of the first part for the payment of said sums by the holder, shall be binding upon the party of the second part hereto."

After procuring the contracts mentioned, the corporation proceeded to sell, for a fixed consideration, the privileges therein acquired to any person or family of persons whom it could induce to purchase the same, taking from such person an application as follows:

"The Universal Service Agency
"302 Miller Building
"North Yakima, Washington.

"I hereby apply for the service furnished by the Universal Service Agency for the period of one year, and agree that if a contract is issued to me·that I will abide by the rules and regulations in said contract contained, and will pay therefor the sum of fifteen dollars ($15) and one dollar ($1) for each of my children, as follows: Five dollars ($5) and one dollar ($1) for each of my children cash and the balance in not more than four equal payments, beginning on or before the 10th of the month after my contract is issued; and I hereby consent that my contract may be cancelled upon default of any payment or upon my breach of any of the rules and regulations in said contract specified. [Names and ages of the family of the applicant.]

"A fee of .. dollars accompanies this application. . . ."

On receipt of the application and the payments specified, it delivered to the purchaser the following instrument:

"Application No. ....                    Contract No. ....
"Medical, Pharmaceutical and Mercantile Benefits Offered by
The Universal Service Agency, a Corporation, of
North Yakima, Washington.

"In consideration of the compensation hereinafter provided and upon compliance with the stipulations hereinafter

contained, the Universal Service Agency, hereinafter called the Agency, hereby offers the Holder and the members of his family dependent upon him, whose name is [Naming applicant's wife and children] the special contracts with their privileges and benefits which are hereto attached and enumerated as contracts A, B, C, D, E, F, .., the enjoyment of the privileges and benefits in said contracts offered, subject always to the conditions following, to-wit:

"I.    That it is agreed and understood that the agency is acting as the agent of the holder in securing the propositions contained in riders 'A,' 'B,' 'C,' 'D,' 'E,' and 'F,' that said propositions are contingent offers which become contracts upon their acceptance by the holder and his continued compliance with the conditions herein stipulated and that acceptance thereof shall at all times be evidenced by the payment to the agency of the compensation hereinafter provided and the delivery of these presents to the holder.

"II.    The life of said contracts and each of them shall continue for a period of one year after the date of these presents, it being agreed that delivery and acceptance shall be considered made as of the date of said contracts.

"III.    The holder shall not be entitled to the privileges or benefits in said contracts offered unless he is in possession of, and exhibits to the persons or firms, from whom said privileges and benefits are claimed, evidence of his right thereto.

"IV.    The agency will furnish to each holder a card showing the persons and firms offering privileges and benefits to him, the names of his family dependent on him and the time for which he has paid the compensation due the agency. Said cards shall be sufficient evidence of the holder's acceptance of the offers herein contained and when exhibited will entitle the holder to all the privileges and benefits herein offered. The agency reserves the right to change the list of persons or firms appearing thereon without notice. Said card shall be non-negotiable and non-transferable.

"V.    In presenting the various offers herein contained the agency acts only as the agent of the parties and assumes no liability for the breach of any one or all of said contracts. The agency agrees, however, that in the event of a breach, it will use its best efforts to procure other persons or firms to offer the same or similar service.

"VI.   The agency shall use its discretion in selecting the physicians and pharmacists, but in no case is it an insurer against the negligence of any physician or pharmacist offering services or benefits herein.

"VII.   The contracts herein contained offering reduced rates on merchandise or for the performance of service are made contingent upon cash payments by the holder.

"VIII.   The privileges and benefits in these presents offered are contingent upon the holder paying to the agency its compensation at the time and in the manner following: that is to say, fifteen dollars ($15) per year, and one dollar ($1) additional for each child which the holder may have dependent upon him, five dollars and one dollar for each child, payable cash in advance, and the balance in not more than four equal monthly payments on or before the 10th day of each and every month until paid.

"Said amounts to be in full compensation to the agency in securing the contracts herein offered and in payment of the services of physicians not otherwise provided for.

"The agency grants to the holder without charge the privilege of consulting with and the advice and services of its attorneys on all legal matters in which he is personally interested, including conveyancing and all matters within the scope of service usually rendered by attorneys and counsellors at law, excepting: (1) Matters involving his domestic relations, (2) Matters requiring an appearance in any court, (3) Matters in which the agency's attorneys represent opposite parties, (4) Collections will be taken by the agency's attorneys for a fee of fifteen (15) per cent. of the amount collected, provided it be collected without suit."

The attached contract of the shoe dealer mentioned in the instrument is as follows:

## "SHOES.

"Allen & Mackie do hereby agree that they will sell to the holder and members of his family dependent on him any of their merchandise in the regular course of trade at ten per cent discount from the current retail prices on cash sales of one dollar or more or on such credit sales as they may at their option make, except special sales, for a period of one year from and after the date and delivery of this contract No. ...., dated and delivered this .... day of .........,

1914. The delivery of this contract and the continuing compliance with the stipulations required by the Universal Service Agency hereto attached and made a part hereof shall constitute an acceptance of this offer by the holder, the sufficiency of the consideration therefor being admitted.

"Allen &amp; Mackie<br>
"Per J. H. Allen."

That of the dealers in drugs and medicines:

## "DRUGS.

"We, the Reading Drug Co., a co-partnership, Central Drug Co., a corporation, and Fred L. Janeck, do hereby agree that we and each of us will fill for the holder and the members of his family dependent on him any and all prescriptions of physicians that may be presented by the holder or any member of his family dependent on him, at a flat and uniform rate of thirty-five cents ($0.35) for a period of one year from and after the date and delivery of this contract No. ...., dated and delivered this .... day of .........., 1914. The delivery of this contract and the continuing compliance with the stipulations required by the Universal Service Agency hereto attached and made a part hereof, shall constitute an acceptance of this offer by the holder, the sufficiency of the consideration therefor being admitted.

"Reading Drug Co.,<br>
"By E. A. Isaacson.<br>
"Central Drug Co., a corporation,<br>
"By J. E. Barkes,<br>
"Fred L. Janeck."

And that of the physician:

"Dr. H. B. Pratt, a licensed physician and surgeon, does hereby agree that he will furnish to the holder and to members of his family dependent on him as their names shall appear upon the card furnished by the Universal Service Agency, and that the holder and his said family shall be entitled to all reasonable physician's services falling within the scope of the duties of a physician and surgeon, including treatment of all physical diseases and ailments of every kind, nature and description, excepting: first, venereal diseases; second, chronic and incurable diseases; third, major surgery. Provided, however, that the holder must at all times come to the office

of the physician for treatment if physically able so to do. That the holder shall pay to the physician one-half the regular professional fee in obstetrical cases. That the holder shall pay one-half the usual mileage for necessary trips outside the limits of the city of North Yakima. That the holder shall at all times be entitled to call in other physicians for consultation or assistance and pay therefor such fees as such consulting or assisting physicians may demand. Provided, further, that the expense of all medicines and appliances shall be at the expense of the holder; said services to be rendered for a period of one year beginning two weeks from and after the date and delivery of this contract No. . . . . dated and delivered this . . . . day of . . . . . . . . . ., A. D. 1914.

"The delivery of this contract and the continued compliance with the stipulations required by the Universal Service Agency hereto attached and made a part hereof, and the strict payment of all sums required by the Universal Service Agency at the time and in the manner in said contract required shall constitute an acceptance of this offer by the holder; the consideration for the services above enumerated being limited to the payment made by the holder to the said Universal Service Agency. The receipt of said sum by the said Universal Service Agency in my behalf being sufficient consideration for the services herein offered and not otherwise provided for.

"Witness my hand and seal this 15th day of April, 1914.
                                    "Dr. H. B. Pratt."

Section 1 of the insurance code (Laws 1911, ch. 49, p. 161; 3 Rem. & Bal. Code, § 6059-1), defines insurance as follows:

"Insurance is a contract whereby one party called the 'insurer,' for a consideration, undertakes to pay money or its equivalent, or to do an act valuable to another party called the 'insured,' or to his 'beneficiary,' upon the happening of the hazard or peril insured against, whereby the party insured or his beneficiary suffers loss or injury."

The question therefore is, does the business of the corporation constitute an insurance business within the meaning of that term as defined by the statute. If it does, then the corporation is subject to restraint at the suit of the insurance

commissioner, otherwise it is not. The essential elements of an insurance contract, it will be observed from the definition given, are (1) an insurer, (2) a consideration, (3) a person insured or his beneficiary, (4) a hazard or peril insured against whereby the insured or his beneficiary may suffer loss or injury.

Testing the business of the respondent by these essentials, it seems to be wanting in the principal essential necessary to make it an insurance contract. Clearly there is no hazard or peril whereby the purchasers of these contracts may suffer loss or injury, which the respondent insures against. It does not guarantee that any of the contracting parties, even the physician, will perform the services agreed upon. On the contrary, in the paragraph lettered V of its offer of benefits, it expressly declares that it "assumes no liability for the breach of any one or all of such contracts." It is true that it does say in the same paragraph that, in the event of a breach of the agreement by the dealers or physician, it will use its best efforts to procure other persons or firms to offer the same or a similar service. But this, while it may require the respondent to use reasonable diligence to procure another person to perform the services in case the contracting party for any reason fails therein, and may render it liable to the contract holder in damages if it should fail to exercise such diligence, it is in no sense a guarantor or an insurer that the service will be performed. There is, therefore, as we see it, no hazard or peril insured against, and the transaction being lacking in this essential element, it is not an engaging in the insurance business.

As authority for his position, the insurance commissioner relies principally upon the so-called *Physicians' Defense Company Cases*, found in 199 Fed. 576, 47 L. R. A. (N. S.) 290, and in 100 Minn. 490, 111 N. W. 396, and perhaps somewhat upon the case from this court of *State ex rel. Fishback v. Globe Casket & Undertaking Co.*, 82 Wash. 124, 143 Pac.

878, L. R. A. 1915 B 976. But the contracts in these cases which were held to be contracts of insurance differ widely from the contract in the case at bar. In the *Physicians' Defense Company Cases,* the company agreed, for a stated consideration paid to it by a physician, to defend the physician against "all civil suits for damages for malpractice, based on professional services rendered by himself or his agent during the time of the contract at its own expense, not exceeding five thousand dollars," subject to certain defined conditions. There was in those cases a contract for indemnity against a hazard which might cause the physician loss, but, as we have attempted to show, no hazard or peril is insured against by the contract in the case at bar. So with the case cited from this court. There was an insurance against loss to the beneficiary of the insured. We cannot, therefore, think them conclusive, or even in point in the case at bar.

Our conclusion requires the affirmance of the judgment below. It is so ordered.

MORRIS, C. J., ELLIS, and MAIN, JJ., concur.