UNION ELECTRIC COMPANY, a
corporation, and Hugh R. Mug,
Plaintiffs–Respondents,

v.

James C. KIRKPATRICK, Secretary of
State of Missouri, Defendant,

and

Citizens for a Radioactive Waste Policy,
Inc., and Mark Haim,
Intervenors–Defendants–Appellants.

No. 62493.

Supreme Court of Missouri,
En Banc.

Oct. 20, 1980.

Lewis C. Green, St. Louis, for intervenors–defendants–appellants.

William Ferrell, Francis X. Duda, Joseph E. Birk, St. Louis, for plaintiffs–respondents.

MORGAN, Judge.

This appeal revolves around an effort by Union Electric Company, a public utility corporation, to construct a nuclear power plant in Callaway County, Missouri, and specifically what is presently identified as Proposition No. 11 reference the 1980 general election.

On July 3, 1980, a group identified as Citizens For A Radioactive Waste Policy, Inc., filed initiative petitions with the Secretary of State, pursuant to §§ 126.021, 126.031 and 126.051, RSMo Supp.1980, entitled: "Citizens For A Radioactive–Waste Policy Initiative Petition To Regulate The Operation Of Nuclear Power Generating Facilities;" and, therein submitted "A Proposed Act To Regulate The Operation Of Nuclear Power Generating Facilities." We quote a portion thereof.

Be It Enacted By The People Of The State Of Missouri, As Follows:

Section 1. No electrical power generating facility utilizing nuclear fission as the power source may be operated in this state after the effective date of this Act, unless

1. An acceptable site (or sites) for the permanent storage of radioactive wastes from the facility is capable of receiving such wastes and

2. The owners or operators of the electrical power generating facility have posted with the Public Service Commission a bond to secure the anticipated cost of decommissioning the facility at the end of its useful life.

Thereafter, the proposed act, reference subsection one, in § 3 designates "acceptable" as licensed by the U.S. government for permanent storage and defines the word "capable" as having a currently effective notification from the U.S. government on file with the Public Service Commission that the site will accept all wastes anticipated to be generated by the facility throughout its anticipated life; and, reference subsection two, § 4 sets out those factors to be calculated in estimating the cost of decommissioning the facility for determining the amount of the bond.

On August 27, Union Electric Company, herein a respondent, filed suit for a declaratory judgment and injunctive relief to prohibit the Secretary of State from certifying the initiative petition for inclusion on the November 4, 1980, general election ballot. Therein it was alleged, *inter alia*, that the title of the initiative and proposed law were violative of § 50 of Article III of the Missouri Constitution, which provides in part that: "Petitions for laws shall contain not more than one subject which shall be expressed clearly in the title . . . ."

On September 15, the Secretary of State certified the proposed act for inclusion on the November 4, 1980, general election ballot pursuant to § 126.081, RSMo Supp.1980. On September 16, the trial court found for respondent and ruled that the proposed law contained more than one subject and that the title thereto did not express clearly the subject thereof. The judgment entered ordered the Secretary of State to remove Proposition No. 11 from the November 4 ballot but stayed the order until October 24 to provide an opportunity for appeal.

Although there exist various treatises and a host of other authorities[1] instructive on principles of statutory construction and drafting rules, the cases indicate that an analysis of any particular enactment or proposal is dependent upon the applicable constitutional provisions, and most importantly upon the particular language and subject matter of the proposal. In other words, determination of a proposal's constitutionality is dependent primarily, if not exclusively, on case–by–case semantic and contextual analysis.

---

1. *See, e.g.*: Sutherland, Statutes and Statutory Construction (4th ed.); Rudd, "No Law Shall Embrace More Than One Subject," 42 Minn.L. Rev. 389 (1958); and Sweet, "Title of Bills Required by Missouri Constitution," 9 J.Mo.Bar 225 (1953).

First, we consider the title question under the constitutional mandate that it be limited to "one subject." All agree that its purpose is to give interested persons notice of the subject of a proposed bill to prevent deception through use of misleading titles. If the title gives adequate notice, the requirement is satisfied. However, even a liberal construction as to the adequacy thereof requires that the "subject of the act" be evident with a sufficient clearness to give notice of the *intent* and *purpose* thereof to those interested or affected by the proposal. It is not required that the title set out "details" of the contents of the proposal. *State v. Weindorf*, 361 S.W.2d 806 (Mo.1962); *United Brotherhood of Carpenters and Joiners v. The Industrial Commission*, 352 S.W.2d 633 (Mo.1962); *Edwards v. Business Men's Assur. Co. of America*, 350 Mo. 666, 168 S.W.2d 82 (1942); and *Willhite v. Rathburn*, 332 Mo. 1280, 61 S.W.2d 709 (1933). More recently, it was said that: "The ability of the voters to get before their fellow voters issues they deem significant should not be thwarted in preference for technical formalities." *United Labor Committee of Missouri v. Kirkpatrick*, 572 S.W.2d 449, 454 (Mo. banc 1978).

Respondents contend that the language in the title, *i.e.*, "to regulate the operation of" is misleading because it connotes regulation of presently operating facilities where none now exist or could become operative under the requirements of this proposal. The alleged deception is that a voter would be led to believe that *operation* is presently on–going. We think it sufficient to say that any connotation which the term "operation" may commonly convey does not relate essentially to a *time* concept; *i.e.*, "operation" may be present, past, future; on–going, sporadic, continuous or ended. The underlying theme of the argument is that the title is inadequate because it suggests only regulation when the proposal, in fact, is prohibitory. We find no such deception and reject the argument. Even a curbstone approach to the problem would make it obvious to the average voter that the power to regulate necessarily includes the power to "mandate" or "prohibit" certain specific aspects of the operation so long as they do not, in fact, prohibit the objective sought. Either affirmative or negative orders would be contemplated within the concept of a regulatory power. More formally, we note from Black's Law Dictionary, Fifth Edition, that the definition of "regulate" includes "to direct by rule or restriction." Conversely, all would agree that an outright prohibition of any activity destructive of the objective thereof would not classify as a regulation. Such is not this case, and in reaching our conclusion we have considered the authorities submitted by respondents and particularly those of this state. *Graff v. Priest*, 356 Mo. 401, 201 S.W.2d 945 (1947); *Berry v. Majestic Milling Co.*, 284 Mo. 182, 223 S.W. 738 (1920); *State v. Crites*, 277 Mo. 194, 209 S.W. 863, 864 (1919); and *State v. Burgdoerfer*, 17 S.W. 646 (1891).

Secondly, we consider the "one subject" rule and find that the proposed act is not violative thereof. Both requirements are directed toward the operation of a nuclear power plant and clearly fall within the bounds of a regulatory power. As noted, the subject of the act is regulation. Requiring a showing that an operator can care for radioactive wastes and secure the decommissioning of the plant causing the same obviously involve the same subject, *i.e.*, regulation of an electrical power generating facility utilizing nuclear fission. The same result occurs whether an operator is ordered to comply or prohibited upon non–compliance.

Lastly, we make the observation that respondents did not raise the issue of "federal preemption" of the subject matter in the trial court, but did by written brief in this Court wherein it was asserted that: "As a practical matter, the preemption issue vividly points out the substantive impropriety of this entire initiative exercise." During oral argument before this Court, respondents agreed with appellants that preemption was not being presented as an issue. Those interested might see: *State ex rel. Util. Consumers Council v. Pub. Serv. Com.*, 562 S.W.2d 688[17, 18] (Mo.App.1978);

*Northern States Power Co. v. State of Minnesota*, 447 F.2d 1143 (8th Cir. 1971), *aff'd mem.*, 405 U.S. 1035, 92 S.Ct. 1307, 31 L.E.2d 576 (1972).

The judgment of the trial court is reversed and all restraints therein against the Secretary of State placing Proposition No. 11 on the ballot at the November 4, 1980, general election are for naught held. So ordered.

All concur.