BLUE CROSS HOSPITAL SERVICE,
INC. OF MISSOURI, et al.,
Plaintiffs-Respondents/Cross-Appellants,

v.

J.H. FRAPPIER, Director, Department
of Consumer Affairs, et al.,
Defendants-Respondents,

The Missouri Psychological Association,
a Missouri not-for-profit corp.,
Intervenor-Defendant/Respondent,

Missouri Pharmaceutical Association, et
al.,
Intervenors-Defendants-Appellants/
Cross-Respondents.

No. 65881.

Supreme Court of Missouri,
En Banc.

Dec. 18, 1984.

Rehearing Denied Jan. 15, 1985.

Robert F. Schlafly, Henry J. Mohrman, St. Louis, Mike Dallmeyer, Jefferson City, Max Bagby, Kansas City, for plaintiffs-respondents/cross-appellants.

John Ashcroft, Atty. Gen., Richard L. Wieler, Melodie A. Powell, Asst. Attys. Gen., Jefferson City, for defendants-respondents.

Harvey Tettlebaum, Duane Benton, Jefferson City, Daniel P. Card II, David B. Lacks, St. Louis, Thomas J. Downey, Jefferson City, for intervenor-defendant-appellant-cross-respondents.

BLACKMAR, Judge.

The plaintiffs are health service corporations organized under Chapter 354, RSMo 1978. Plaintiff Blue Cross and Blue Shield of Kansas City hs 450,000 members; plaintiff Blue Cross Hospital Service, Inc. of Missouri has 780,000 members and plaintiff Missouri Medical Service has 650,000 members.

The plaintiffs provide payment for medical care incurred by subscribing members. They make payment directly to providers and maintain separate contractual agreements with subscribers and health care providers. By contrast, commercial insurers customarily reimburse policyholders directly. Plaintiffs claim that this arrangement allows them some control over the charges of health care providers.

In 1983 the General Assembly in a single bill adopted an addition to § 375.936(11)(b), RSMo 1978 and also amended Chapter 354. The amendments, among other things, forbade health service corporations to discriminate against chiropractors and psychologists, which plaintiffs had refused to pay as a matter of policy. The plaintiffs claim unconstitutionality, both as to the legislative procedures and the substantive effects of the statute.

House Bill 127 as introduced had the following title:

An Act to repeal section 375.936 RSMo 1978, relating to the definition of unfair practices in the business of insurance, and to enact in lieu thereof one new section relating to the same subject. [Plaintiffs' Exhibit 1.]

Its only effect was to add the word "psychologist" to the practitioners listed in subsection 11(b).

Section 375.936 had been in force since 1959. One of its purposes was to prohibit "unfair discrimination" by insurance companies among providers of health care. The section had not been applied to health service corporations until 1978. In the course of its journey through the General Assembly, portions of other bills were combined with House Bill 127. The bill, as finally adopted, contained 94 new sections relating to Chapter 354 corporations. The title was broadened to make express reference to the regulation of health service corporations.

The plaintiffs' petition charged that House Bill 127 was unconstitutional, asserting that: (1) the amendments during passage changed its original purpose in violation of Art. III, § 21 of the Missouri Constitution; (2) the bill deals with more than one subject, the content of which is not clearly expressed in the title, as required by Art. III, § 23; (3) the bill impairs the obligation of contracts in violation of Art. I, § 13 of the Missouri Constitution and Art. I, § 10 of the United States Constitution; (4) the bill violates the due process clauses of the federal and state Constitutions; (5) the bill deprives persons in the position of plaintiffs of equal protection of

laws in violation of the Fourteenth Amendment; and (6) the provisions of the bill are preempted by ERISA, 29 U.S.C. § 1001, *et seq.*

The trial court found for the plaintiffs on grounds (1) and (2) specified above, and found it unnecessary to pass on the remaining grounds alleged. Both parties appeal, the plaintiffs contending that the court should have declared the statutes invalid under ERISA. We conclude that none of the reasons assigned for invalidity has merit, and so reverse the judgment and remand with directions to declare the statute valid as against the challenges tendered.

### 1. *Legislative History*

■■■ Statutes are presumed to be constitutional. *State v. Newlon,* 627 S.W.2d 606 (Mo. banc 1982), *cert. denied* 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149 (1982). In the leading recent case on the permissible scope of amendments during the course of legislation, *Westin Crown Plaza Hotel Co. v. King,* 664 S.W.2d 2 (Mo. banc 1984), this Court upheld the validity of a statute with a history similar to that of the statute now before us. House Bill 127, in its original form, prohibited insurance companies and health service corporations from discriminating against psychologists. Amendments were later added that provided broader anti-discriminatory measures. The amendments did not constitute a substantial departure from the original anti-discriminatory purpose. Amendments germane to the initial bill do not change its original purpose. *State v. Ludwig,* 322 S.W.2d 841 (Mo. banc 1959). Art. III, § 21 was not designed to inhibit the normal legislative processes, in which bills are combined and additions necessary to comply with the legislative intent are made. The plaintiffs have not met their rather substantial task of showing that the legislative history rendered the statute unconstitutional.

Plaintiff relies on *Allied Mutual Ins. Co. v. Bell,* 353 Mo. 891, 185 S.W.2d 4 (1945). This Court held that a statute was unconstitutional because it introduced a tax which was not within the purpose of the original bill. The Court emphasized that the original purpose of the bill was not included in the law as passed. The original House Bill 127 remained part of the final House Bill 127. The general purpose of the bill was not changed, but rather additions were made. The modification of the title to reflect the added provisions is permissible. *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31 (Mo. banc 1982).

The title, also, is not constitutionally infirm. The title of the original House Bill 127 read as follows:

An Act to repeal section 375.936 RSMo 1978, relating to the definition of unfair practices in the business of insurance, and to enact in lieu thereof one new section relating to the same subject. [Plaintiffs' Exhibit 1.]

The title of the revised bill is as follows:

An Act to repeal sections [listing sections] relating to the regulation of certain corporations and other organizations which provide services or coverage for certain health related risks, and to enact in lieu thereof ninety-five new sections relating to the same subject. [Plaintiffs' Exhibit 4]. [Section numbers omitted].

■■■ We believe that the title fairly describes the subject matter of the adopted bill. A title need not give specific details of a bill. An announcement of the general subject matter is sufficient to give notice of the bill's content. *Downey v. Schrader,* 353 Mo. 40, 182 S.W.2d 320 (Mo. banc 1944); *Edwards v. B.M.A.,* 350 Mo. 666, 168 S.W.2d 82 (1942). The purpose of the "one subject" mandate is to give interested persons notice of the area of regulation to prevent deception through use of misleading titles, and to maintain the concept of germaneness. This requirement is satisfied if the title is sufficient to alert persons interested in the subject matter. *Union Electric Co. v. Kirkpatrick,* 606 S.W.2d 658 (Mo. banc 1980). The original title clearly applied to plaintiffs, for Section 375.932(3) provides that § 375.936 applies to Chapter 354 corporations. Plaintiffs had the opportunity for notice, at that point, that the bill was pending. The amended

title clearly refers to the regulation of health service corporations and all of the added sections are germane to this regulation. The test is whether all provisions of the bill fairly relate to the subject expressed in the title, have natural connections therewith or are incidents or means to accomplish the expressed purpose. *Westin Crown Plaza Hotel Co. v. King, supra.* The title gave the public adequate notice that health service corporations were to be regulated.

### 2. *Substantive Constitutional Provisions*

The plaintiffs fail to demonstrate any unconstitutional impairment of their contracts. A law which affects a contract does not necessarily violate Art. I, § 13 of the Constitution of Missouri and Art. I, § 10 of the Constitution of the United States. Private executory contracts are not immune from the valid exercise of the police power, and persons cannot oust the state of its police power by making long-term contractual arrangements. *State ex rel. Kansas City v. Public Service Commission,* 524 S.W.2d 855 (Mo. banc 1975). The police power exists to promote the public health, safety and welfare. Providing freedom of choice as to health care providers is clearly within the scope of this power. An exercise of the police power is valid if the objective is proper and the means adopted to accomplish that object are rationally related to the end sought. *Missouri Dental Board v. Alexander,* 628 S.W.2d 646 (Mo. banc 1982). Forbidding health service corporations from discriminating against certain health care providers is a rational method of ensuring freedom of choice in the health care market.

Plaintiff cites *Ketcham v. King County Medical Service Corp.,* 81 Wash.2d 565, 502 P.2d 1197 (1972), as authority that this type of "freedom of choice" statute unconstitutionally impairs contracts. We disagree with the logic of that decision. The Washington court viewed the purpose of the statute to be one of taking benefits from one class of providers and giving them to another. The opinion also revealed a strong bias against optometrists. The primary purpose of House Bill 127, as we see it, is to provide freedom of choice among health care providers. This is a matter of importance to the public health which falls within the police power of the state.

The test of substantive due process is met if a statute has a rational relationship to a legitimate state interest. *United States v. Carolene Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). There is an obvious state interest in providing freedom of choice for health care consumers, and the statute bears a rational relationship to that interest. State policies are for the legislature to decide and legislative decisions should be reversed only upon a clear showing of unconstitutionality. Plaintiffs' due process argument has no merit.

Plaintiffs claim a violation of the equal protection clause of the Fourteenth Amendment because §§ 354.027 and 354.090.2 apply only to health service corporations. Section 354.027 provides that such corporations must pay any licensed provider even though the corporation has no contract with the provider. Commercial insurance companies generally do not have provider contracts, and a provision of this kind is not necessary in the regulation of these companies. Section 375.936(11)(b) prevents insurance companies from discriminating against an extensive list of licensed providers in the provision of policy benefits. Section 354.090.2 would compel plaintiffs to recognize the assignment of membership benefits to a pharmacist as valid. Commercial insurance companies would not ordinarily discriminate among pharmacists because they do not usually make payments to pharmacists, and plaintiffs fail to demonstrate that this section places them at a invidious disadvantage.

The equal protection clause guarantees equal treatment for all who are similarly situated but does not forbid a state from creating classes in the adoption

of regulations under its police power. *City of St. Louis v. Liberman,* 547 S.W.2d 452 (Mo. banc 1977). The state may validly regulate health service corporations in a manner differing from the regulation of commercial insurers. The two are organized under different chapters of the state code. Each provides insurance by different methods. Plaintiffs' own witness testified that there is a rational basis for treating health service corporations in a different way. The statutes contain several chapters, each applying to a different class of insurer, and the provisions show substantial variation. Plaintiffs are not members of a suspect class, nor does the statute involve fundamental personal rights. Plaintiffs, therefore, have the burden of showing that any distinction is purely arbitrary. Such a showing has not been made. When the substantial differences between nonprofit hospital and medical service corporations and commercial insurance carriers are considered, the legislature, in exercising its police powers, may classify nonprofit corporations as separate from commercial insurers. *Hospital Service Corp. of Rhode Island v. West,* 112 R.I. 164, 308 A.2d 489 (1973). With this power goes the authority to regulate the industries differently if the regulation is reasonable.

On this point, plaintiff again relies on a decision from another state. *Blue Cross v. Commonwealth of Virginia,* 221 Va. 349, 269 S.E.2d 827 (1980). An anti-discrimination statute exempted commercial insurance companies from 1973 until 1979. Missouri already has a statute, § 375.-936(11)(b), prohibiting discrimination by commercial insurers. The statute does not impose an onerous burden on the plaintiff. We also disagree with the Virginia Court's holding that there are no differences between health service corporations and commercial insurers which justify differing regulation.

### 3. *ERISA Preemption*

Plaintiffs' final argument is that House Bill 127 is preempted by certain provisions of ERISA, 29 U.S.C. § 1144. ERISA, however, excepts "any law of any state which regulates insurance ..." 29 U.S.C. § 1144(b)(2)(A).

The plaintiffs argue that health service corporations are not engaged in the "business of insurance." Our legislature in § 375.947 has decreed otherwise, in regard to the anti-discrimination statutes involved in this case. The plaintiffs admit that they are in competition with insurance companies. They accept a predetermined premium from customers, in exchange for payment of future medical expenses. The spreading of risk, as practiced by plaintiffs, is the hallmark of insurance. The insurance exemption contained in the McCarran Ferguson Act, 15 U.S.C. § 1012(b), is not identical to the exemption for state laws regulating insurance contained in ERISA. The McCarran Ferguson Act grants exemption from the federal antitrust laws which declare a strong national policy, and the exemption should be grudgingly applied. *Group Life & Health Ins. Co. v. Royal Drug,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979).

Plaintiffs contend that McCarran Ferguson cases are authoritative in construing preemption clause contained in ERISA. ERISA gives specific permission to the states to regulate insurance, and the states should be permitted to determine the scope and extent of the desired regulation. Congress, furthermore, specifically enumerated certain entities which are not to be considered insurance companies for ERISA preemption. 29 U.S.C. § 1144(b)(2)(B). Health service corporations were not included in this group. We believe that plaintiffs are within the insurance exemption of ERISA for purposes of state regulation.

We are not convinced, in any event, that, aside from the insurance exemption, the challenged legislation is preempted by ERISA. ERISA preempts any state law relating to employee benefit plans. *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The statute in question does not relate to employee benefit plans. It prohib-

its health service corporations from engaging in certain discriminatory practices. Nothing is required of an employee benefit plan. The plan may provide, or not provide, any bargained for service. A self-insured plan is free to discriminate among providers. Commercial insurers, however, may not discriminate among licensed providers. This Court previously held there is no indication in the legislative history of ERISA that Congress intended to preempt areas of state regulation not addressed by ERISA. *Electrical Workers, Local No. 1, Credit Union v. IBEW–NECA Holiday Trust Fund*, 583 S.W.2d 154 (Mo. banc 1979). Indirect regulation of employee benefit plans is permissible provided the regulation does not interfere with the purpose of ERISA. ERISA is intended to establish minimum standards and safeguards for private pensions while maximizing the freedom of decision making by employers and employees. H.R.Rep. No. 533, 93 Cong.2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 4639. Nothing in House Bill 127 conflicts with these purposes.

Our holding is consistent with *Wadsworth v. Whaland*, 562 F.2d 70 (1st Cir. 1977) *cert. denied* 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978) (opinion by Judge Lay of the Eighth Circuit). That Court held that a state statute requiring the issuers of group health insurance policies to provide coverage for the treatment of mental illnesses and emotional disorders was not preempted by ERISA, simply because group health insurance is a part of many employer benefit plans. Judge Lay observed that a contrary holding would frustrate the insurance exemption to the preemptive provisions of ERISA.

Also consistent is *Attorney General v. The Travelers Insurance Co.*, 391 Mass. 730, 463 N.E.2d 548 (1984), decided by the

Supreme Judicial Court of Massachusetts, following remand from the Supreme Court of the United States for reconsideration in the light of *Shaw v. Delta Airlines, Inc., supra*. The Massachusetts court held that a provision for mandatory mental health benefits in policies of accident and sickness insurance, including expressly "any employees' health and welfare fund," was a regulation of "insurance" and therefore not preempted by ERISA. The case has been taken by appeal to the Supreme Court of the United States and has been set for oral argument. 53 U.S.L.W. 3295, 3323 (1984). This case is perhaps a stronger one for allowing state regulation than the Massachusetts case, because there is no specific reference in our statute to employees' health and welfare funds.

The judgment of the circuit court is reversed and the case is remanded with directions to enter a judgment declaring that House Bill 127 is not unconstitutional for the reasons assigned by plaintiffs.

RENDLEN, C.J., and HIGGINS, GUNN and BILLINGS, JJ., concur.

WELLIVER and DONNELLY, JJ., dissent in separate opinion filed.

WELLIVER, Judge, dissenting.

I respectfully dissent. I would affirm the judgment of the circuit court on the ground that the legislation challenged in this proceeding violated the prohibitions of Sections 21 and 23, Mo. Const. art. III, thereby making it unnecessary to reach the questions of due process, equal protection and impairment of contract.[1]

The practice of taking a bill that appears doubtful of passage and combining it with a bill or bills reasonably assured of passage and passing the resulting bill under a broad and general amended title is one of the most expeditious and effective legislative

---

1. The principal opinion appears to rely on *Missouri Dental Board v. Alexander*, 628 S.W.2d 646 (Mo. banc 1982) as authorizing any impairment of the contracts herein under the police power. It was there stated that "The record is void of any evidence that appellants are parties to any executory contracts entered into prior to enactment of these statutes and affected by enactment of these statutes. Article I, § 13 prohibits the state from enacting statutes which impair the rights of parties to any *existing* contract." *Id.* at 652. If anything, it would seem to suggest the contrary.

strategies. It is also one of the most deceptive. This is the precise practice that Sections 21 and 23 seek to prohibit.

It is no secret that since courts began holding that Blue Cross-type hospital and medical service plans were not insurance,[2] almost every session of the General Assembly has been faced with bills seeking to regulate Blue Cross as an insurance company. In my opinion, H.B. 127, 82nd General Assembly, effectively accomplishes via the back door that which could never be accomplished via the front door, i.e., legislative—judicial conversion of Blue Cross into a regulated insurance company. I remain firmly convinced that courts must strictly enforce Sections 21 and 23 of art. III of our Constitution if we are to maintain "the integrity of and public confidence in both the legislative process and our system of judicial review." *Westin Crown Plaza Hotel Co. v. King*, 664 S.W.2d 2, 7 (Mo. banc 1984) (Welliver, J., dissenting).

Most who deal with third party payment of hospital and medical services are aware that Blue Cross-type plans have fought a last ditch battle to contain rising hospital and medical costs. Simply stated, they have done so by reason of their unique contract with their members which enabled them to offer and hold out to participating hospitals and physicians the offer of direct payment of pre-agreed fees for services, leaving the non-participating and the higher chargers to fend for themselves in collection of their charges. My concern now is where in insurance law or regulations or standard insurance contracts will there be found any authorization to so resist rising medical costs. More likely, such action would be viewed as vexatious delay in the payment of insurance claims.

I would affirm the judgment of the circuit court.

DONNELLY, Judge, dissenting.

On this appeal, we must weigh an exercise of the police power of Missouri against the provision "[t]hat no law * * * impairing the obligation of contracts * * * can be enacted." Mo. Const. art. I, § 13.

In *State ex rel. Kansas City v. Public Service Commission*, 524 S.W.2d 855, 864 (Mo. banc 1975), this Court said:

> The rule we adopt recognizes that the police power is essential to the achievement of such objectives as protecting the health and safety of the public and that it is as broad as need be to achieve those objectives. At the same time, it recognizes that the police power is not so powerful that it impairs the obligations of contracts where such impairment is not necessary to achievement of the objective for which the power is being exercised.

The issue on this appeal is whether, as defendants contend, the addition of the word "psychologist" to the list of health providers is necessary for protection of the public health and welfare.

"In discussing this question, [the principal opinion] * * * assumes the inevitability of an affirmative answer. It does not in any manner demonstrate that if [psychologists are not added to the list] * * *, the protection of the public [health and welfare] * * * by means of the police power will be frustrated or even hindered." *State ex rel. Kansas City, supra*, at 860.

In my view, the challenged statute violates our Missouri Constitution. It unconstitutionally impairs the obligation of contracts. Mo. Const. art. I, § 13. We need not address the similar provision in Article I, § 10 of the United States Constitution. *See Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978).

I respectfully dissent.

---

**2.** *See Jordan v. Group Health Association*, 107 F.2d 239 (D.C.Cir.1939); *California Physicians' Service v. Garrison*, 28 Cal.2d 790, 172 P.2d 4 (1945); *Commissioner of Banking & Insurance v. Community Health Service*, 129 N.J.S. 427, 30

A.2d 44 (1943); *State ex rel. Fishback v. Universal Service Agency*, 87 Wash. 413, 151 P. 768 (1915). *See generally,* Annot. 167 A.L.R. 322 (1946).