Ian McEUEN, by and through next friend Gary McEUEN, and Missouri Protection and Advocacy Services, Inc., Appellants,

v.

MISSOURI STATE BOARD OF EDU-CATION and Missouri Department of Elementary and Secondary Education, Respondents.

No. SC 84953.

Supreme Court of Missouri, En Banc.

Nov. 25, 2003.

Michael H. Finkelstein, Missouri Protection and Advocacy Services, Jefferson City, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Curtis F. Thompson, Asst. Atty. Gen., Jefferson City, for respondents.

STEPHEN N. LIMBAUGH, JR., Judge.

This case presents a challenge to the constitutional validity of Senate Substitute for House Bill 2023 (SSHB 2023) enacted and signed into law in 2002 and codified as sections 162.670, 162.675, 162.961, and 162.962, RSMo 2002. These laws, which pertain to the education of students with disabilities, are alleged to have been enacted in violation of the "original purpose" and "clear title" provisions of article III, sections 21 and 23 of the Missouri Constitution. The trial court granted summary judgment in favor of respondents, holding that the laws were constitutional. This Court has jurisdiction of the appeal. Mo. CONST. art. V, sec. 3. The judgment is affirmed.

The facts of the case were submitted by stipulation. Appellants are Ian McEuen, a student with disabilities in the Boone County school district, and Missouri Protection and Advocacy Services, Inc., a "non-profit, public interest law center ... authorized to pursue legal, administrative, and other appropriate remedies on behalf of individuals with disabilities...." Respondent Missouri State Board of Education is a constitutionally created entity charged with, *inter alia,* the promulgation of regulations setting standards for identifying and evaluating children with disabilities and the approval of all special education programs established under sections 162.670 to 162.995, RSMo; respondent Missouri Department of Elementary and Secondary Education is an executive agency that serves as the Board's agent in carrying out the educational policies of the state.

House Bill 2023 (HB 2023) was introduced on February 21, 2002. Its title was "AN ACT To repeal sections 162.961 and 162.962, RSMo, and to enact in lieu thereof two new sections relating to resolution conferences." This original version of the act would have amended a part of section 162.961 pertaining to the discipline of students with disabilities, and all of section 162.962, pertaining to procedures for judicial review of resolution conferences, which provide a mechanism for parents of students with disabilities to challenge the assignment of those children in special education programs. On April 5, 2002, the House passed HB 2023 by unanimous vote, and that same day, the bill was reported to the Senate.

Thereafter, on May 10, 2002, Senate Substitute for HB 2023 was filed and titled "AN ACT To repeal sections 162.670, 162.675, 162.961, and 162.962, RSMo, and to enact in lieu thereof four new sections relating to the appropriate educational placement of students." Under SSHB 2023, the amendments to sections 162.961 and 162.962 were substantially the same. However, amendments also were made to sections 162.670 and 162.675 repealing the "maximization standard" for disabled students—the requirement that programs be designed to maximize capabilities of disabled students—along with corresponding definitions of statutory terms. Specifically, section 162.670, which "declared the policy of the state of Missouri to provide or to require public schools to provide to all handicapped and severely handicapped children ... special educational services sufficient to meet the needs and maximize the capabilities of handicapped and severely handicapped children ...," was amended to provide or require only "a free appropriate education consistent with the provisions set forth in state and federal regulations implementing the Individuals with Disabilities Education Act (IDEA), 20

U.S.C. Section 1400 et seq. and any amendments thereto." This change of state policy adopted the federal standard in determining the sufficiency of special education services. In due course, SSHB 2023 was passed by the Senate and reported back to the House. Then, on May 13, 2002, the Monday of the last week of the legislative session, the bill, as amended, was passed again by the House. It was later signed into law by the governor.

■ In addressing challenges to the constitutionality of statutes, this Court is guided by several well-established standards. First, statutes are presumed to be constitutional, and this Court is to construe any doubts regarding a statute in favor of its constitutionality. *Westin Crown Plaza Hotel Co. v. King,* 664 S.W.2d 2, 5 (Mo. banc 1984). In addition, statutes will be upheld unless they "clearly and undoubtedly" violate constitutional limitations. *Hammerschmidt v. Boone County,* 877 S.W.2d 98, 102 (Mo. banc 1994). Finally, the party raising the challenge bears the burden of demonstrating that the statute is unconstitutional. *C.C. Dillon Co. v. City of Eureka,* 12 S.W.3d 322, 327 (Mo. banc 2000).

Appellants first argue that "SSHB 2023 was passed in violation of article III, section 21, of the Missouri Constitution in that the original purpose of HB 2023 was dramatically and substantively changed by the last-minute SSHB 2023 so that legislators were unaware of what they were voting for."

■ Article III, sec. 21, states in pertinent part that "no bill shall be so amended in its passage through either house as to change its original purpose." This prohibition is not intended to "inhibit the normal legislative processes, in which bills are combined and additions necessary to comply with the legislative intent are made."

*Blue Cross Hosp. Service, Inc. of Missouri v. Frappier,* 681 S.W.2d 925, 929 (Mo. banc 1984). Instead, the prohibition "is against the introduction of matter that is not germane to the object of the legislation or that is unrelated to its original subject." *Stroh Brewery Co. v. State,* 954 S.W.2d 323, 326 (Mo. banc 1997). Even changes "that bring about an extension or limitation of the scope of the bill are not prohibited," provided, as noted, that the changes are germane. *Id.*

A bill's original purpose, of course, is necessarily determined as of the date of introduction. *Mo. State Medical Ass'n v. Mo. Dep't of Health,* 39 S.W.3d 837, 839 (Mo. banc 2001). However, as this Court has repeatedly observed, "[T]he Constitution does not require that the original purpose be stated anywhere, let alone in the title as introduced. Original purpose is the general purpose, 'not the mere details through which and by which that purpose is manifested and effectuated.'" *Id.* (citation omitted). As the cases illustrate, the general purpose is often interpreted as an overarching purpose, not necessarily limited by specific statutes referred to in the bill's original title or text. For instance, in *Blue Cross Hospital Service, Inc. v. Frappier,* a bill that in its original form "prohibited insurance companies and health service corporations from discriminating against psychologists" was deemed to accommodate the larger original purpose of imposing a number of other restrictions and anti-discriminatory measures on health service corporations. 681 S.W.2d at 929.

Similarly, in *Stroh Brewery Co. v. State,* this Court held that the original purpose of a bill initially introduced to address a single statute "relating to the auction of vintage wine" also encompassed a number of amendments regulating the sale and labeling of beer and malt liquor. 954 S.W.2d at

324–25. The original purpose, this Court determined, was "the amendment of Missouri's liquor control law." *Id.* at 326.

Most recently, in *Missouri State Medical Association v. Missouri Department of Health,* this Court held that a bill initially introduced to enact a new statute "requiring that health insurers cover—for a minimal co-payment—[certain] cancer screenings" also included in its original purpose later amendments mandating a variety of other health services for cancer as well as other serious illnesses. 39 S.W.3d at 839. The original purpose, in other words, was not just a mandate to insurers to provide co-payment of certain cancer screenings, but a mandate to insurers to provide health services in general. *See id.* at 839–40.

The case at hand is closely analogous. Appellants contend that "[t]he original purpose of HB 2023 was to reduce the scope of judicial review of decisions from administrative hearing panels concerning special education students." In the general sense, however, the original purpose was to address the educational placement of special education students, which is the very thing at issue in that judicial review. For these reasons, the later amendments to the bill addressing state policy for the educational placement of special education students are wholly consistent with the original purpose of the bill.

Appellants also claim that the title to SSHB 2023 is underinclusive in violation of article III, section 23, which states: "No bill shall contain more than one subject which shall be clearly expressed in its title...." Under this provision, a title may be unconstitutional if it is too broad and amorphous or if it is too restrictive and underinclusive. *Home Builders Ass'n of Greater St. Louis v. State,* 75 S.W.3d 267, 270 (Mo. banc 2002). In either case, the title fails in its purpose to "apprise legisla-

tors and the public of the subject matter of pending laws." *Id.* at 271. Within those restrictions, a title may give adequate notice merely by referring to the bill's general subject matter and need not give specific details. *Blue Cross,* 681 S.W.2d at 929.

In this case, the subject of the bill closely correlates with both the original purpose and the title, which is "AN ACT To repeal sections 162.670, 162.675, 162.961, and 162.962, RSMo, and to enact in lieu thereof four new sections relating to the appropriate educational placement of students." The title is not underinclusive because it references everything included in the bill. That is, it refers to the general subject matter—"the appropriate educational placement of students"—in the specific and express context of repealing and reenacting four statutes that pertain to the appropriate educational placement of students with disabilities.

According to appellants, however, the title is underinclusive because "it did not fairly apprise legislators that the bill repealed Missouri's declared policy to maximize the capabilities of handicapped students." They add, more particularly, that the title "states only that it relates 'to the appropriate educational placement of students' " and that "[c]ontrary to the use of the word 'placement' in its title, the sole purpose of SSHB 2023 had nothing to do with placement … [i]ts sole purpose was to repeal Missouri's declared policy to maximize the capabilities of handicapped students." Appellants further contend that "[t]he title of SSHB 2023 refers to the locale where services are to be delivered when in fact the declared policy of the state, which was repealed by SSHB 2023, relates exclusively to the services to be delivered to handicapped students regardless of locale."

Appellants, however, mischaracterize the use of the word "placement." All four statutes affected do indeed pertain to the placement of students with disabilities— the placement of those students within the special education programs provided under chapter 162. There is no mention of "placement" in the sense of the physical placement of a child within a certain locale. Given a fair reading, the title is not underinclusive.

In conclusion, appellants have failed to carry their burden to demonstrate that SSHB 2023 was unconstitutionally enacted. Accordingly, the judgment is affirmed.

All concur.